1
**KELLEY DRYE & WARREN LLP**
Becca J. Wahlquist (SBN 215948)
2  bwahlquist@kelleydrye.com
Victor J. Sandoval (SBN 344461)
3  vsandoval@kelleydrye.com
350 South Grand Avenue, Suite 3800
4  Los Angeles, CA 90071
Tel: (213) 547-4900
5  Fax: (213) 547-4901

6
**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*Pro Hac Vice* forthcoming)
7  lmazzuchetti@kelleydrye.com
One Jefferson Road, 2nd Floor
8  Parsippany, NJ 07054
Tel: (973) 503-5900
9  Fax: (973) 503-5950

10  *Attorneys for Defendant*
*Keurig Green Mountain, Inc.*

11

12
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 13  SONYA VALENZUELA, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-09042 |
| 14 | Assigned to Hon. Jacqueline Scott Corley |
| 15                Plaintiff, | |
| | **DEFENDANT'S NOTICE OF MOTION** |
| 16        v. | **AND MOTION TO DISMISS** |
| | **PLAINTIFF'S COMPLAINT;** |
| 17  KEURIG GREEN MOUNTAIN, INC., a Delaware corporation d/b/a KEURIG.COM; and DOES 1 through 25, inclusive, | **MEMORANDUM IN SUPPORT** |
| 18 | [Request for Judicial Notice and Proposed Order filed concurrently] |
| 19                Defendants. | |
| | Hearing: Thursday, April 20, 2023 |
| 20 | Time: 10 a.m. |
| | Location: Courtroom 8 |
| 21 | |

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday, April 20, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 8 of the United States District Court for the Northern District of California, before the Honorable Jacqueline Scott Corley, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, Defendant Keurig Green Mountain, Inc. will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing the Complaint and claims therein of Plaintiff Sonya Valenzuela with prejudice for failure to state a claim upon which relief may be granted.

The basis for this Motion is that it is clear from the face of the Complaint, the documents referenced therein, and judicially noticeable materials that Plaintiff failed to adequately plead a claim under Section 631(a) of the California Invasion of Privacy Act. The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, all other materials supporting the Motion or the Reply filed in support thereof, and such arguments and authorities as may be presented at or before the hearing.

DATED: March 7, 2023

By: _/s/ Becca J. Wahlquist_
Becca J. Wahlquist (SBN 215948)
bwahlquist@kelleydrye.com
Victor Sandoval (SBN 344461)
vsandoval@kelleydrye.com
KELLEY DRYE & WARREN
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901

Lauri Mazzuchetti (_pro hac vice_ forthcoming)
lmazzuchetti@kelleydrye.com
KELLEY DRYE & WARREN
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

_Attorneys for Defendant_
_Keurig Green Mountain, Inc._

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND AND PLAINTIFF'S ALLEGATIONS ............................................... 2

     A.     Plaintiff's Many "Chat" Complaints.............................................................. 2

     B.     Plaintiff's Complaint.................................................................................... 4

     C.     Plaintiff's Agreement To The Website's Privacy Policy..................................... 6

III.    ARGUMENT ......................................................................................................... 7

     A.     Plaintiff Fails to State a Valid Claim Under Section 631 ................................. 7

           1.     Plaintiff's Claim that Keurig Violated Section 631(a) Fails Because Plaintiff Concedes that Keurig Was the Intended Recipient of Plaintiff's Communication ...................................... 8

           2.     The Section 631(a) Claim Fails Because Plaintiff Has Not Pled Use of a Telegraph or Telephone.............................................. 12

           3.     Plaintiff Has Not Adequately Pled Any Unauthorized Connection of a Communication While In Transit ...................................... 13

           4.     Plaintiff Otherwise Fails to State a Claim under CIPA .......................... 16

     B.     Plaintiff Consented To The Complained-Of Practice ......................................... 17

IV.    CONCLUSION...................................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
5
556 U.S. 662 (2009).............................................................................7, 11, 16

6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................7, 11, 16
7

8

*Bunnell v. Motion Picture Ass'n of Am.*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) .................................................14

9

*Byars v. Goodyear Tire Rubber & Co.*,
10
No. 5:22-cv-01358, 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ...........11

11

*Byars v. Hot Topic, Inc.*,
No. 5:22-cv-01652, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ............... *passim*
12

13

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .....................................................11

14

*Clark v. California Dep't of Forestry and Fire Prot.*,
15
212 F. Supp. 3d 808 (N.D. Cal. 2016) ...................................................7

16

*Cody v. Boscov's*,
-- F. Supp. 3d --, No. 8:22-cv-01434, 2023 WL 2338302 (C.D. Cal. Mar. 2,
17
2023) .....................................................................................1, 2, 9, 11

18

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...................................................17
19

20

*Glob. Policy Partners, LLC v. Yessin*,
686 F. Supp. 2d 631 (E.D. Va. 2009) .....................................................15

21

*Gonzales v. Uber Techs., Inc.*,
22
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .................................................18

23

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ...................................................12, 17
24

25

*In re Google Inc.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sep. 26, 2013)..............12

26

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................2, 9, 12
27

28

*Harris v. County of Orange*,
   682 F.3d 1126 (9th Cir. 2012) .................................................................6

*Javier v. Assurance IQ, LLC*,
   No. 21-16351, 2022 WL 1744107 (9th Cir. 2022) ....................................13, 15, 18

*Johnson v. Blue Nile, Inc.*,
   No. 3:20-cv-08183, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021)........................12

*Konop v. Hawaiin Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ............................................................14, 15, 16

*Licea v. Caraway Home Inc.*,
   No. 5:22-cv-01791, 2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) ...........................2

*Lindsay-Stern v. Garamszegi*,
   No. 14-cv-01970, 2016 WL 11745948 (C.D. Ca. Oct. 13, 2016)........................15

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021)........................................... *passim*

*Membrila v. Receivables Performance Mgmt, LLC*,
   No. 09-cv-02790, 2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ...........................9

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
   906 F. Supp. 2d 1017 (C.D. Cal. 2012) .......................................................15

*Mireskandari v. Daily Mail*,
   No. 12-cv-02943, 2013 WL 12129559 (C.D. Cal. Jul. 30, 2013)........................14

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ........................................................15

*Ribas v. Clark*,
   38 Cal. 3d 355, 696 P.2d 637 (Cal. 1985) .....................................................8

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) ........................................................................9

*United States v. Corinthian Coll*s,
   655 F.3d 984 (9th Cir. 2011) ......................................................................6

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..................................................14, 16

*Warden v. Kahn*,
   99 Cal. App. 3d 805 (1979) ........................................................................9

*Williams v. What If Holdings*,
   No. 3:22-cv-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ............. *passim*

1

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................................18

2

3

*Yale v. Clicktale, Inc.*,
    No. 3:20-cv-07575, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)..........................12

4

**Statutes**

5

Cal. Civ. Proc. Code § 340(a) ....................................................................................5

6

Cal. Penal Code § 631(a) ................................................................................. *passim*

7

Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523 ................14

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.    **INTRODUCTION**

2        The Complaint of plaintiff Sonya Valenzuela ("Plaintiff") is just one splash of a tsunami

3   of litigation filed by her counsel – who has filed *at least eighty-nine* nearly-identical, "cookie

4   cutter" complaints against various companies – purporting to allege wiretapping claims under the

5   California Invasion of Privacy Act ("CIPA") against companies that offer chat features on their

6   websites.  Plaintiff's theory is that by using vendor-provided software tools to enable chat

7   features on their websites, companies such as defendant Keurig Green Mountain, Inc. ("Keurig")

8   commit, or aid and abet, a criminal wiretap every time a consumer engages in an innocuous and

9   voluntary interaction with a website chat feature.  If this theory sounds far-fetched, it should.  It

10  is difficult to imagine that companies, such as Keurig, can on the one hand comply with the

11  California Consumer Privacy Act ("CCPA")[1] – one of the most robust privacy laws in the nation

12  that specifically regulates any data disclosures (including via the use of internet tools) to another

13  party (*i.e.*, service providers) – but at the same time be committing, or aiding and abetting, a

14  wiretap.

15        California federal courts have recently begun to address the tsunami of filed cases, and

16  have rejected at the pleading stage the very claims that Plaintiff seeks to assert here – which,

17  given the duplicative nature of the filings, are based on the very same allegations.  For example,

18  the United States District Court for the Central District of California recently dismissed nearly

19  identical complaints in *Byars v. Hot Topic, Inc*., No. 5:22-cv-01652, 2023 WL 2026994 (C.D.

20  Cal. Feb. 14, 2023) ("*Hot Topic*") and *Cody v. Boscov's*, -- F. Supp. 3d --, No. 8:22-cv-01434,

21  2023 WL 2338302 (C.D. Cal. Mar. 2, 2023) ("*Boscov's*").  In *Hot Topic*, District Judge Jesus

22  Bernal dismissed one of these "cookie cutter" complaints, holding it to be "a remarkable

23  illustration of conclusory pleading."  2023 WL 2026994, at *7.  Judge Bernal further held that

24  CIPA does not extend to the use of a third party vendor to "record and analyze [defendant's] own

25  data in aid of [defendant's] business," which is all that was alleged by the plaintiff in that case.[2]

26  _____

27  [1] Cal. Civ. Code §§ 1798.100(a)-(d).

28  [2] In *Hot Topic*, in addition to ruling that the plaintiff's complaint was subject to dismissal under
    Rule 12(b)(6), the Court also ruled *sua sponte* that the plaintiff failed to plead factual allegations
    that could support subject matter jurisdiction. *Id.* at *5-7.  Further, in another of the "tsunami"

1    *Id.* at \*10.  Judge Sunshine Sykes reached the same result in *Boscov's* on the plaintiff's Section

2    631(a) claim.  The plaintiffs' allegations in *Hot Topic* and *Boscov's* were copied almost verbatim

3    by Plaintiff here, and the reasoning employed in those cases on the plaintiffs' Section 631 claims

4    applies equally here.

5         Notably, in dismissing the *Hot Topic* complaint under Rule 12(b)(6), Judge Bernal relied

6    heavily on recent decisions from this District that also dismissed similar CIPA claims at the

7    pleading stage in analogous contexts involving software tools used on websites.  *Id* at \*7-10; *see*

8    *also Williams v. What If Holdings*, No. 3:22-cv-03780, 2022 WL 17869275, \*1-4 (N.D. Cal.

9    Dec. 22, 2022); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021).  In those

10   cases, Judge Alsup and Judge Beeler held that website owners' decisions to use vendor-provided

11   software tools to operate websites do not render those vendors "interceptors" of communications

12   so as to trigger CIPA's restrictions on wiretapping or eavesdropping.  *Id.*  For the same reasons

13   as articulated in *Hot Topic*, *Williams* and *Graham*, this Court too should dismiss Plaintiff's

14   Complaint under Rule 12(b)(6).  In addition, there are other pleading failures identified herein

15   that also warrant dismissal.

16   **II.    BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

17        **A.    Plaintiff's Many "Chat" Complaints**

18        Since the summer of 2022, Plaintiff's counsel, Pacific Trial Attorneys, have filed at least

19   eighty-nine nearly-identical class action complaints, each purporting to allege CIPA claims

20   against companies that offer chat features on their websites.[3]  *See* Request for Judicial Notice

21   ("RJN") at 3-7.  The complaints in these lawsuits, which are unvaryingly brought on behalf of

22

23   cases brought against Caraway Home, Inc., Judge Bernal dismissed the Complaint on the basis
     that the plaintiff failed to adequately plead factual allegations that could establish either subject
24   matter jurisdiction or personal jurisdiction.  *Licea v. Caraway Home Inc.*, No. 5:22-cv-01791,
     2023 WL 1999496, at \*5-10 (C.D. Cal. Feb. 9, 2023).

25   [3] *See also Caraway Home Inc.*, 2023 WL 1999496, at \*6 (commenting on a near identical
26   complaint filed by counsel for Plaintiff, "[w]hy is the entire complaint written at such a high
     level of generality that it could apply word-for-word to the dozens of other businesses this law
27   firm is suing?  And surely, whatever one's views on the propriety of copying and pasting from
     boilerplate pleadings, there is a point at which all reasonable people should agree the practice has
28   gone too far.  This case reached that point, and then blew past it."); *see also Hot Topic*, 2023 WL
     2026994, at \*5.

Plaintiff Valenzuela and a few other serial plaintiffs (including Jose Licea, Miguel Licea, Miguel Esparza, Arisha Byars and Annette Cody), are identical, except for the plaintiff (in some instances), the targeted defendant, and the defendant's URL.  *Id.*  Indeed, Plaintiff Valenzuela has been the named plaintiff in at least *twenty-three* of these duplicative complaints, including in cases filed in the United States District Court for the Central District of California and the California Superior Courts for Los Angeles County, San Diego County, and Riverside County.[4]

In a recent decision addressing one of the virtually identical complaints, Judge Bernal made the following observation:

> [T]he Court acknowledges the central dynamic in this litigation, underscoring all of the deficiencies in the [Complaint]: Plaintiff, and her counsel, Scott Ferrell, are serial litigants bringing numerous "cookie cutter" lawsuits under CIPA against various businesses that operate websites.  As of December 9, 2022, Mr. Ferrell appears to have filed at least 58 of these virtually identical lawsuits. . . . This Court alone has six virtually identical lawsuits filed by Plaintiff's Counsel on its docket. . . . Mr. Ferrell appears to work with multiple "tester" plaintiffs to drum up these lawsuits, with Mr. Licea and Ms. Byars serving as his primary vehicles for litigation.  The cases bear strong echoes of serial Americans with Disabilities Act (ADA) litigation, in which Mr. Ferrell has also engaged.

> Initiating legitimate litigation generally requires a considerable expenditure of time: in order to establish jurisdiction and state a claim for relief, a plaintiff must plead specific facts arising out of a specific encounter with a specific defendant. As the saying goes, time is also money.  So when the goal is to file as many lawsuits as possible in the least amount of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to write the

---

[4] *See* RJN at 3-4; *Licea and Valenzuela v. Cinmar, LLC*, No. 2:22-06454 (C.D. Cal.); *Valenzuela v. Aflac Inc.*, No. 2:22-cv-06348 (C.D. Cal.); *Valenzuela v. AIG Direct Ins. Servs. Inc.*, No. 5:22-cv-01561 (C.D. Cal.); *Valenzuela v. BJ's Wholesale Club, Inc.*, No. 2:22-cv-06378 (C.D. Cal.); *Valenzuela v. Carvana, LLC*, No. CVRI2204530 (Cal. Sup. Ct., Riverside Cty.); *Valenzuela v. CNO Services, LLC*, No. 5:22-cv-02084 (C.D. Cal.); *Valenzuela v. Dermacare LLC, d/b/a Bluechew.com*, No. 37-2022-00047405 (Cal. Sup. Ct., San Diego Cty.); *Valenzuela v. Engage3, Inc., d/b/a Engage3.com*, No. 30-2022-01297903 (Cal. Super. Ct., Orange Cty.); *Valenzuela v. Hims & Hers Health, Inc.*, No. 37-2022-00047422 (Cal. Sup. Ct., San Diego Cty.); *Valenzuela v. Kaspersky Lab, Inc.*, No. 2:22-cv-09157 (C.D. Cal.); *Valenzuela v. Kroger Co.*, No. 2:22-cv-06382 (C.D. Cal.); *Valenzuela v. Massage Envy Franchising LLC*, No. 2:22-cv-05817 (C.D. Cal.); *Valenzuela v. Michael Kors (USA), Inc.*, No. 2:22-cv-05902 (C.D. Cal.); *Valenzuela v. Nationwide Mutual Ins. Co.*, No. 2:22-cv-06177 (C.D. Cal.); *Valenzuela v. Papa Murphy's Int'l, LLC*, No. 5:22-cv-01789 (C.D. Cal.); *Valenzuela v. Pear Sports, LLC*, No. CVRI2204529 (Cal. Sup. Ct., Riverside Cty.); *Valenzuela v. Pierre Fabre USA, Inc.*, No. 3:22-cv-02079 (S.D. Cal.); *Valenzuela v. Rugs USA LLC*, No. 30-2022-01294507 (Cal. Sup. Ct., Orange Cty.); *Valenzuela v. Under Armour, Inc.*, No. 22STCV24206 (Cal. Super. Ct., LA Cty.); *Valenzuela v. VF Outdoor LLC, d/b/a Smartwool.com*, No. 37-2022-00046954 (Cal. Super. Ct., San Diego Cty.); *Valenzuela v. West Marine Products Inc.*, No. 5:22-cv-02082 (C.D. Cal.).

original template in such a way that hardly anything needs to be swapped out. Sometimes a plaintiff can get away with this, particularly if a defendant is willing to offer a quick cash settlement. But other defendants may not roll over so easily, and raise some fundamental questions, not least: Why is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing? And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far. This Court observed in *Miguel Licea v. Caraway Home Inc., et al.*, that Plaintiff's Counsel had not even bothered to change the title of the pleading document (simply titling it "Pleading Template"), or write the case number on the caption page. At least here it appears that Plaintiff's Counsel has written the case number, though the PDF file of the [Complaint] is still titled "Pleading Template." The [Complaint] is replete with evidence of cut-and-paste work, perhaps the most obvious of which is that it *never* mentions the name of the company Plaintiff is suing after the caption page, because doing so might take more than a few seconds to alter when filing a new lawsuit.

*Hot Topic, Inc.*, 2023 WL 2026994, *4-5 (internal citations omitted).

As also noted by Judge Bernal, in each of the complaints, the plaintiffs essentially admitted that they were not genuine website visitors (consumers using the chat feature in order to actually converse with the virtual chat assistant regarding customer service issues); the plaintiffs claim instead to be "testers" who purposefully visited the websites in question so that they could bring these lawsuits. *Id.* at *2. As Judge Bernal commented, "[p]laintiff goes as far as to compare herself to Rosa Parks, who she claims was acting as a 'tester' when she initiated the Montgomery Bus Boycott in 1955. Plaintiff's self-aggrandizing comparison trivializes Rosa Parks, a key accelerant of the civil rights movement. It was not well-received by the Court." *Id.* at *2 n.4 (internal citations omitted). Plaintiff here makes the identical allegation. Compl. ¶¶ 16, 17 and n.3.

## B.   **Plaintiff's Complaint**

In Plaintiff Valenzuela's Complaint in this action, she alleges a single cause of action under Section 631(a) of CIPA. Compl. at ¶¶ 27-32. She alleges that "[w]hile physically within California during the class period, Plaintiff visited Defendant's website and conducted a *brief* conversation with an agent of Defendant through the website chat feature." *Id.* at ¶ 4 (emphasis

added).  Plaintiff does not allege the date of her supposed visit to the Keurig website,[5] nor does she allege any information or dialogue that was exchanged during her purported "brief conversation."  *See generally id.*  While Plaintiff describes conversations between unnamed visitors and the coffee retailer's website as "private," "deeply personal," and/or "highly sensitive," she does not allege that she provided any private, deeply personal, and/or highly sensitive information to the Keurig Virtual Assistant during her alleged "brief" chat.  *See id.* Introduction, ¶¶ 12, 14, 15.

As in the other complaints filed by Plaintiff and Pacific Trial Attorneys, Plaintiff merely identifies the statutory elements on Section 631(a) of CIPA, and then alleges that Keurig violated each.  She contends that "Defendant both *wiretaps* the conversations of all website visitors and allows a third party to *eavesdrop* on the conversations in real time during transmission, and claims," and claims the purported "wiretapping" is achieved by embedding code into Defendant's chat feature "that automatically intercepts, records and creates transcripts of all such conversations."  *Id.* at ¶¶ 10-12.  Also, similar to the other complaints filed – and because her Complaint is "cookie cutter" and not specific to Keurig – Plaintiff does not even attempt to specifically identify the third party that she contends was allowed to eavesdrop on her alleged communication; rather, she alleges "on information and belief" that it might have been "Salesforce and/or WebEx," and/or some other unidentified third party vendor.  *Id.* at ¶ 12. Plaintiff also makes conclusory allegations that the chat was "monitored," "stored," "recorded," "intercepted," and/or "transcribed, and that these actions all happened "in real time," "during transmission," and/or "automatically."  *Id.* at ¶¶ 4, 9, 10, 12, 14, 15, 19, 21-22, 23(a), 24, 29-30.

Plaintiff also claims that "[l]ive chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight . . . When people are chatting, you have direct access to their exact pain points."  *Id.* at ¶ 10 (emphasis removed).  But while Plaintiff theorizes that chat transcripts are *capable* of being valuable, Plaintiff does not plausibly allege

---

[5] Nor does Plaintiff indicate what she means by "during the class period."  *Id.*  CIPA has a one-year statute of limitations.  Cal. Civ. Proc. Code § 340(a).  Because Plaintiff did not indicate the date of the alleged violation, Keurig must reserve its right to challenge Plaintiff's claims on statute of limitations grounds.

1    any third-party software vendor actually did anything with Plaintiff's information or chat session

2    beyond creating and/or storing a transcription for Keurig. *See generally id*.

3        **C.**     <u>**Plaintiff's Agreement To The Website's Privacy Policy**</u>

4            While Plaintiff alleges that "Defendant neither informed visitors of this conduct nor

5    obtained their consent to these intrusions[,]" *id.* at ¶ 13; *see also* Introduction, ¶¶ 4, 12, 19-20,

6    judicially noticeable documents show otherwise. Keurig's privacy policy is visibly hyperlinked

7    on the website that Plaintiff visited. *See* RJN at Ex. 1.[6]

8            Because Plaintiff does not allege the date of her visit, there are two Keurig privacy

9    policies that could apply to her visit, which were in effect during the one-year statutory period

10   prior to the Complaint filing on December 21, 2022. The first was effective from July 6, 2021

11   through January 26, 2022 (the "July 6, 2021 Privacy Policy") and the second was effective

12   January 27, 2022 through January 5, 2023 (the "January 27, 2022 Privacy Policy," together the

13   "Privacy Policies"). Under the "How We Share Your Personal Information" section, the Privacy

14   Policies each stated that: "[w]e use service providers to help us operate and improve the

15   Services, such as for data hosting and maintenance, analytics, customer care, marketing, payment

16   processing, order fulfillment, and security operations." RJN at Exs. 2, 3.

17            Further, Privacy Policies stated that:

18          **PERSONAL INFORMATION WE COLLECT**

19          There are several ways we may obtain information about you, including through (A) information you provide to us directly; (B)

20          information that we automatically collect; and (C) information we receive from third parties.

           …

21

22          **Personal Information You Provide**

         KDP collects Personal Information when you choose to share it with

23         us, such as:

---

24   [6] This Court may consider and take judicial notice of Keurig's website, including the Privacy Policies, on this Motion because Plaintiff incorporates the website into her Complaint and it is

25   central to her claims. *See, e.g.*, Compl. Introduction, ¶¶ 4-5, 10, 12-14, 18-21, 23-24, 28-30, ECF No. 1 (incorporating website); *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir.

26   2012) (citation omitted) ("Moreover, documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents"); *United*

27   *States v. Corinthian Coll*s, 655 F.3d 984, 999 (9th Cir. 2011) (the court may consider unattached evidence on a Rule 12(b)(6) motion to dismiss "if (1) the complaint refers to the document; (2)

28   the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.").

> ***Personal Information you provide when you … contact us.*** …
> [W]hen you contact us, we may monitor and record your
> conversation with the KDP representative (where permitted by
> law).
> …
> ***Personal Information you provide for customer support*** We
> collect your feedback and questions that you provide to us for
> customer support. In answering your questions, we may collect
> supporting data from your device.
> **…**

RJN at Ex. 2; *see also* Ex. 3 (same).

The Privacy Policies provide clear notice that information shared with the website by the user may be collected, recorded, and shared with third-party service providers for the legitimate and routine business reasons listed. *Id.*

## III.   **ARGUMENT**

Rule 12(b)(6) requires dismissal where a complaint fails to allege sufficient facts "to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007), and presents nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is facially plausible when a plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. California Dep't of Forestry and Fire Prot.*, 212 F. Supp. 3d 808, 811 (N.D. Cal. 2016) (quoting *Ashcroft*, 556 U.S. at 678). "[C]ourts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). "And even where facts are accepted as true, 'a plaintiff may plead [her]self out of court' if [s]he 'pleads facts which establish that [s]he cannot prevail on h[er] . . . claim.'" *Id.* (quoting *Weisbusch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).

Applying this standard, Plaintiff's claim here should be dismissed with prejudice.

### A.   **Plaintiff Fails to State a Valid Claim Under Section 631**

The California Supreme Court has explained that Section 631(a) of CIPA makes unlawful "three distinct and mutually independent patterns of conduct: [1] intentional wiretapping [of any

telegraph or telephone], [2] wilfully (*sic*) attempting to learn the *contents* or meaning of a *communication in transit* over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities."  *Williams*, 2022 WL 17869275 at *2 (quoting *Tavernetti v. Superior Court of San Diego County*, 22 Cal. 3d 187, 192, 583 P.2d 737, 741 (Cal. 1978) (emphasis added); *see also* Cal. Penal Code § 631(a); *accord Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sep. 26, 2013)).  Section 631(a) includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability."  *Mastel*, 549 F. Supp. 3d at 1134 (quoting Cal. Penal Code § 631(a)) (internal quotations removed).

To borrow from Judge Bernal's description, "[i]n a remarkable illustration of conclusory pleading," *Hot Topic*, 2023 WL 2026994, *7, Plaintiff here merely restates the statutory components of Section 631(a) in her Complaint, and alleges that Keurig has engaged in each of the different types of conduct covered.  *See* Compl. ¶ 27.  As set forth more fully below, Plaintiff's Section 631(a) claim should be dismissed because she has not pled facts that, if proven, could support a violation of any of these provisions of CIPA.

1. **Plaintiff's Claim that Keurig Violated Section 631(a) Fails Because Plaintiff Concedes that Keurig Was the Intended Recipient of Plaintiff's Communication**

Section 631(a) provides a cause of action only for "eavesdropping" by way of wiretap – that is, "the secret monitoring of conversations by *third parties*."  *Ribas v. Clark*, 38 Cal. 3d 355, 359, 696 P.2d 637 (Cal. 1985) (emphasis added).  Plaintiff's CIPA claim is predicated entirely upon the theory that the software tool that Keurig embedded on its website to offer a chat feature qualifies as a "third-party" for purposes of any alleged eavesdropping on communications that Plaintiff had with Keurig allegedly using that chat feature.  Compl. ¶¶ 10, 12.  This claim lacks merit because Plaintiff's Complaint concedes that Keurig was the intended recipient of her

1  communication and there are no allegations that any alleged third-party provided anything more

2  than a tool to support Keurig's business.  *Id.* at ¶ 4; *see also id.* at ¶¶ 14, 16, 28, 30.

3          (a)     <u>A Party Cannot Eavesdrop On Its Own Communication</u>

4          The law is well-settled that "[p]arties to a conversation cannot eavesdrop on their own

5  conversation, so no other part of Section 631(a) is applicable" with respect to the intended

6  recipient of a communication.  *Williams*, 2022 WL 17869275, at *2.  As Judge Alsup opined in

7  *Williams* and Judge Bernal reaffirmed in *Hot Topic*, California state and federal courts have long

8  made clear this fundamental aspect of Section 631(a).  *See id.*; *Hot Topic*, 2023 WL 2026994, at

9  *8; *see also Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (finding that Section 631 "has

10 been held to apply only to eavesdropping by a third party and not to recording by a participant to

11 a conversation"); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (holding that Section 631

12 does not apply to a party to a conversation because "it is never a secret to one party to a

13 conversation that the other party is listening to the conversation; only a third party can listen

14 secretly to a private conversation"); *Graham*, 533 F. Supp. 3d at 831 (holding that "a party to a

15 communication can record it (and it is not eavesdropping when it does)"); *Membrila v.

16 Receivables Performance Mgmt, LLC*, No. 09-cv-02790, 2010 WL 1407274, at *2 (S.D. Cal.

17 Apr. 6, 2010) ("Plaintiff's claim for violation of  Section 631 fails, because this section applies

18 only to eavesdropping by a third party and not to recording by a participant to a conversation.").

19 As Judge Bernal and Judge Alsup recently opined, these rulings are all consistent with Ninth

20 Circuit precedent, which recognize a direct party exemption under Section 631(a).  *Hot Topic*,

21 2023 WL 2026994, *8; *Williams*, 2022 WL 17869275 at *2-3.  Judge Sykes of the Central

22 District of California reiterated this principle just last week in another case brought by Pacific

23 Trial Attorneys asserting the same allegations as Plaintiff Valenzuela.  *Boscov's*, 2023 WL

24 2338302.  The Court in *Boscov's* held that "Defendant was a party to the customer chats at issue

25 in Plaintiff's complaint. Thus, under this well-established 'party exception', Plaintiff's claim that

26 Defendant is directly liable for wiretapping fails and amendment would be futile."  *Id.*

27

28

1    In this case, Plaintiff alleges she "conducted a brief conversation *with an agent of*

2    *[Keurig]* through the website chat feature." Compl. ¶ 4 (emphasis added); *see also id.* at ¶¶ 14,

3    16, 28, 30.  Thus, Plaintiff concedes that Keurig was a party to the communication, which

4    precludes liability under the first three prongs of Section 631(a).

5         (b)    Keurig Did Not Aid Or Abet Any Alleged Violation of CIPA

6         In light of Keurig's participation in the alleged communication, the only possible basis

7    for it to be liable under Section 631(a) is under an aiding and abetting theory, *i.e.*, the fourth

8    prong of Section 631(a).  As Judge Alsup and Judge Bernal recognized, because "parties to a

9    conversation cannot eavesdrop on their own conversation," no other provision of Section 631(a)

10   applies other than the aiding and abetting provision.  *Williams*, 2022 WL 17869275, at *2; *Hot*

11   *Topic*, 2023 WL 2026994, at *8-9 ("As such, like in *Williams*, the only possible basis for

12   Defendant to be liable under Section 631(a) must be an aiding and abetting theory.")

13        But, as the Courts held in *William*s and *Hot Topic*, a plaintiff with claims such as those

14   asserted by Plaintiff here cannot proceed on an aiding and abetting theory because the mere use

15   of a software tool is not equivalent to a third party interception that implicates CIPA.  In

16   *Williams*, the plaintiff brought Section 631(a) claims against a website owner and a software

17   company, which offered a software that the website owner had embedded on its website.  2022

18   WL 17869275, at *1.  The software allegedly "had the ability to document a website visitor's

19   keystrokes and mouse movements as they happened and then create a video replay of the website

20   visitor's interactions with the website." *Id.*  The Court opined that to determine whether an

21   aiding and abetting claim could be asserted against the website owner, "the question boils down

22   to whether [the software provider] was an independent third party hired to eavesdrop on [the

23   website owner]'s communications, or whether [the software provider]'s software was merely a

24   tool that [the website owner] used to record its own communications with [the] plaintiff." *Id.* at

25   *3.  The Court found that "there are no facts to suggest that [the software provider] intercepted

26   and used the data itself. *Id.*  For this reason, the Court dismissed the claims and held the

27

28

software provider tool at issue more resembled that of a physical recorder than an eavesdropper. *Id.* at *4.

In *Hot Topic*, the Court relied heavily on *Williams* to dismiss a Section 631(a) claim brought by Pacific Trial Attorneys that was predicated on identical allegations to the ones asserted by Plaintiff here about a website's use of a chat tool.  Specifically, Judge Bernal found that allegations that "Defendant allows at least one independent third-party vendor (on information and belief, Salesforce) to access its chat communications" and that such third party "harvest[s] data for financial gain," constituted "a mere conclusion" that must be "disregarded under *Twombly* and *Iqbal*."  2023 WL 2026994, at *10.  The Court held that the complaint was subject to dismissal under Rule 12(b)(6) because "the clear inference is that the third-party vendor is engaging in precisely the sort of 'routine' data recordation in *Williams*: the primary function of the vendor appears to be 'storing transcripts of Defendant's chat communications with 'unsuspecting' website visitors.'"  *Hot Topic*, 2023 WL 2026994, at *10.  In *Boscov's*, the Court dismissed a similar complaint that relied on the same allegations to the ones asserted here because "[p]laintiff must provide facts suggesting that [third-parties] are recording [d]efendant's customers' information for some use or potential future use beyond simply supplying this information back to [d]efendant" and had not done so.  *Boscov's*, 2023 WL 2338302.  Plaintiff makes the very same conclusory allegations here that the Courts rejected in *Hot Topic* and *Boscov's*, and this Court should similarly find these allegations to be legally deficient.[7]

---

[7] *Byars v. Goodyear Tire Rubber & Co.*, No. 5:22-cv-01358, 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ("*Goodyear Tire*") is not to the contrary because in that case, the defendant did not seek dismissal on the direct-party exemption. *See Hot Topic*, 2023 WL 2026994, at *11 n.11. Moreover, as noted above, Judge Sykes recently dismissed a CIPA claim on this very ground. *See Boscov's*, 2023 WL 2338302. In any event, *Goodyear Tire* is not persuasive because although the Court acknowledged the four sections of CIPA, it analyzed them all together and did not perform the type of detailed analysis conducted by Judges Alsup and Bernal discussed above.  2023 WL 1788553, at *4.  Further, in *Goodyear Tire*, the court largely relied upon *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014), which is inapposite here because Facebook was not a party to the communication at issue and the complaint provided factual allegations regarding a detailed source code, making allegations about how a third party interception was achieved.  *See id.*  Further, the court in *Hot Topic* respectfully disagreed with the *Goodyear Tire* opinion's persuasiveness as authority on other grounds and declined to follow it. 2023 WL 2026994, at *11.

Dismissal of Plaintiff's Complaint is further supported by *Graham*, where Judge Beeler addressed a similar theory that a vendor qualified as a "third-party" for purposes of CIPA. 533 F. Supp. 3d at 831. The Court recognized that defendant Noom was using "a vendor that provides a software service" and there were "no allegations [] that [the vendor] intercepted and used the data itself." *Id.* at 832. Accordingly, the Court dismissed the CIPA claim at the pleading stage for failure to state a claim. *Id.* at 834; *see also Yale v. Clicktale, Inc.*, No. 3:20-cv-07575, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same); *Johnson v. Blue Nile, Inc.*, No. 3:20-cv-08183, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (same).

Plaintiff's Complaint here makes no allegations to support a contrary result and Plaintiff's CIPA claim should be dismissed on this ground alone.

### 2. The Section 631(a) Claim Fails Because Plaintiff Has Not Pled Use of a Telegraph or Telephone

Plaintiff's CIPA claim under Section 631(a)'s first prong fails for the additional reason that she did not, and cannot, plausibly allege that the purported communication at issue was made using a telegraph or telephone, as contemplated by Section 631(a). Rather, she concedes that the communication was made over the internet, which is not covered under the first prong of Section 631(a).[8]

Indeed, courts have consistently held the first prong of Section 631(a) is "limited to communications passing over 'telegraph or telephone' wires, lines, or cables," *Mastel*, 549 F. Supp. 3d at 1135 (quoting *Matera v. Google*, No. 15-cv-04062, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016), and, as the Court in *Williams* recently reaffirmed, "*does not apply in the context of the internet.*" 2022 WL 17869275 at *2 (emphasis added); *In re Google Inc.*, 2013 WL 5423918, at *20 (explaining that the first prong of CIPA is "limited to communications passing over 'telegraphic or telephone' wires, lines, or cables"); *accord In re Google Assistant*

---

[8] Section 631(a)'s first prong makes unlawful, "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, . . . *with any telegraph or telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system …" Cal. Penal Code § 631(a) (emphasis added).

1    *Privacy Litig.*, 457 F. Supp. 3d 797, 825-26 (N.D. Cal. 2020) ("*Google Assistant*") (holding that

2    CIPA claim under first prong must be dismissed if allegations do not show that technology at

3    issue "operates using telegraph or telephone wires").

4            Here, Plaintiff cannot plead that Keurig or a third party vendor's conduct utilizes

5    telegraph or telephone wires, lines, or cables.  Instead, Plaintiff's claim arises entirely out of

6    internet activity.  *See, e.g.*, Compl. Introduction, ¶¶ 4-5, 10, 12-14, 18-21, 23-24, 28-30.  On this

7    additional basis by itself, Plaintiff does not and cannot assert a claim under the first prong of

8    Section 631(a).[9]

9

10           **3.      Plaintiff Has Not Adequately Pled Any Unauthorized Connection of a
                       Communication While In Transit**

11           Plaintiff's CIPA claim under Section 631(a)'s second prong fails for an additional reason:

12   to satisfy this prong, plaintiff must allege that defendant "willfully and without the consent of all

13   parties to the communication, or in any *unauthorized manner*, read, or attempted to read, or to

14   learn the contents or meaning of any message, report, or communication while the same was *in

15   transit or passing over* any wire, line, or cable, or was being sent from, or received at any place

16   within California."  *Mastel*, 549 F. Supp. 3d at 1136 (emphasis added) (quoting Cal. Penal Code

17   § 631(a)).  Here, and as explained below, Plaintiff makes only makes conclusory allegations that

18   merely parrot the statutory elements of Section 631(a), and are inadequate to satisfy her pleading

19   obligations.

20

21

22   _____

     [9] In her Complaint, Plaintiff cites to *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL
23   1744107, at *1 (9th Cir. 2022) to incorrectly suggest that the first prong of Section 631(a) applies
     to internet communications. Compl. ¶ 18 ("Though written in terms of wiretapping, Section
24   631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to
     read, or to learn the contents' of a communication without the consent of all parties to the
25   communication.").  This statement cited from *Javier*, however, was made in the context of the
     second prong of Section 631(a) – not the first prong.  *Javier*, 2022 WL 1744107, at *1.  This
26   interpretation is consistent with other courts addressing this issue.  *Mastel*, 549 F. Supp. 3d at
     1135 ("While it is true that several federal courts interpreting the CIPA have held that the statute
27   may apply to technologies beyond telephones or telegraphs, those holdings have largely been
     limited to the statute's *second* clause, which prohibits persons from reading, or attempting to
28   read, the 'contents or meaning of any message, report, or communication while the same is in
     transit or passing over any wire, line, or cable' without consent or authorization.")

Further, Courts in California have found that the second prong of CIPA "only imputes liability when the defendant reads, or attempts to read, a communication that is '*in transit or passing* over any wire, line, or cable, *or is being sent from, or received* at any place within' California." *Mastel*, 549 F. Supp. 3d at 1136; *see also Mireskandari v. Daily Mail*, No. 12-cv-02943, 2013 WL 12129559, at *10 n.44 (C.D. Cal. Jul. 30, 2013) (finding that plaintiff had failed to plausibly allege a CIPA claim under the second prong because the complaint failed "plausibly to plead that [defendant] intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data [defendant] held in storage"). It is well settled in this Circuit that in order for "eavesdropping" to occur, a communication must be "intercepted" while it is "in transit or passing over a wire, line or cable." Cal. Penal Code § 631(a).

In interpreting Section 631, "[c]ourts have generally construed [CIPA] as coextensive with the [federal] Wiretap Act." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (citing *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.")); *see also* Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523 ("Wiretap Act"). In *Konop v. Hawaiian Airlines, Inc.*, the Ninth Circuit construed the term "intercept" narrowly, holding that for a communication "to be 'intercepted' in violation of the [federal] Wiretap Act, it must be acquired during transmission, *not while it is in electronic storage*." 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). "Even if the storage phase is transitory and lasts only a few seconds, it is still considered 'electronic storage,'" and is not an interception of a communication in transit. *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007). The Ninth Circuit in *Konop* explained that "[t]his conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" 302 F.3d at 878 (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)). The Ninth Circuit and district court caselaw "generally stands for the

proposition that once an [electronic communication] has been received by the destination server, a communication becomes 'stored' *and contemporaneous interception is no longer possible.*" *Lindsay-Stern v. Garamszegi*, No. 14-cv-01970, 2016 WL 11745948, at *4 (C.D. Ca. Oct. 13, 2016).

Courts applying Section 631(a) and the federal Wiretap Act have acknowledged that, given the speed of modern internet communications, "the Wiretap Act's application to that form of electronic communication is undoubtedly limited."[10] *NovelPoster*, 140 F. Supp. 3d at 951 (dismissing Wiretap Act and Section 631(a) claims related to email communications); *see also Lindsay-Stern*, 2016 WL 11745948, at *4-5.  To be sure, the Ninth Circuit has confirmed that "the existing statutory framework is ill-suited to address modern forms of communication[.]" *Konop*, 302 F.3d at 874.  That is because internet communications, including email, travel so quickly that there it is nearly impossible for an interception while in transit to occur. *NovelPoster*, 140 F. Supp. 3d at 951-52.

Applying these principles, courts have not hesitated to dismiss claims involving internet communications, holding that while they may be accessed either on the originating or receiving end, they are not typically intercepted *during transmission*.  *Id.*; *see also, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (granting summary judgment to defendants where "[t]he undisputed facts [ ] show that Defendants did not access, disclose, or use any emails that had been acquired during transmission. Rather, the emails Defendants viewed were stored on Gmail"); *see also Glob. Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) ("a qualifying 'intercept' under the [Wiretap Act] . . . can only occur where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server").

In the *Vizio Consumer Privacy Litigation*, for example, Judge Staton granted a defendant's Rule 12(b)(6) motion to dismiss the plaintiffs' federal Wiretap Act and Section

---

[10] Again, while the Ninth Circuit in *Javier* recognized that "Section 631(a) applies to Internet communications" it did not address the requirement that a communication must be intercepted "in transit" and, as noted, the Ninth Circuit explicitly reserved decision on issues not addressed by the district court. 2022 WL 1744107, at *1-2.

631(a) claims where the plaintiffs similarly made only conclusory allegations of an interception in transit.  238 F. Supp. 3d at 1227-28.  There, the Court held that:

> Plaintiffs have not articulated with sufficient clarity when Vizio supposedly intercepted their communications.  Besides their conclusory allegation that Vizio intercepted their electronic communications "during transmission" . . . While Plaintiffs need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe Vizio intercepts their communications.

*Id.*

Here, Plaintiff has not alleged when or how a third-party software vendor supposedly intercepted Plaintiff's chat communications.  Given on-point case law, including the Ninth Circuit's decision in *Konop*, it is not plausible that Keurig's alleged use of a software tool effectuated an interception of a communication while in transit (as opposed to from electronic storage).  In fact, Plaintiff's Complaint includes no factual allegations regarding the timing of the alleged "interception" of the communication that could support that any such interception occurred while the alleged internet communication was transit.  *See generally* Compl.  Plaintiff's mere recitation of the bare elements of the statute without factual allegations that, if proven, could support her claim are insufficient.  For this additional reason, Plaintiff's Section 631(a) claim should be dismissed.

### 4.     Plaintiff Otherwise Fails to State a Claim under CIPA

The third and fourth prongs of Section 631(a) restrict any person from using, or attempting to use, "in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section[.]"  Cal. Penal Code § 631(a).  Because Plaintiff does not and cannot plead a claim under the first or second prongs of CIPA Section 631(a), her purported claims under the third and fourth prongs, likewise, fail as a matter of law.[11]  *See Mastel*, 549 F. Supp. 3d at 1137

---

[11] Plaintiff quotes the first three prongs of CIPA, and then states, "[h]ere, Defendant does all *three.*" Compl. ¶ 27. There can be no argument made that reciting the statute and saying Defendant "does" this satisfies the pleading standards of *Iqbal* and *Twombly*.

1    ("Because the court concludes that [plaintiff] has failed to state a claim under either clause 1 or

2    2, his claim that [defendant] violated § 631(a)'s third clause fails as a matter of law.  Likewise,

3    because [plaintiff] has failed to establish an underlying violation, [plaintiff] cannot maintain a

4    claim against [defendant] under the fourth prong because none of the alleged conduct that

5    [defendant] allegedly 'agreed to' or 'aided' violated § 631(a).") (internal citations omitted); *see*

6    *also Google Assistant*, 457 F. Supp. 3d at 827; *see also Williams*, 2022 WL 17869275 at *2.

7            Thus, Plaintiff's CIPA claim under the third and fourth prongs fail on their face, and

8    should be dismissed.

9        **B.    Plaintiff Consented To The Complained-Of Practice**

10           Finally, even if Plaintiff had otherwise stated a valid CIPA claim (which she has not),

11   Section 631(a) of CIPA prohibits certain activities only where no consent has been given.

12   Section 631(a) holds liable anyone "who willfully *and without the consent of all parties to the*

13   *communication*, *or in any unauthorized manner*, reads, or attempts to read, or to learn the

14   contents or meaning of any message, report, or communication while the same is in transit or

15   passing over any wire, line, or cable, or is being sent from, or received at any place within this

16   state . . . ."  Cal. Pen. Code § 631(a).

17           "Where lack of consent is an express element of a claim, as is the case here, it must be

18   alleged in the complaint[,]" and may be challenged on a motion to dismiss.  *Garcia v. Enter.*

19   *Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (dismissing CIPA § 637.6 claim).

20   While Plaintiff alleges in her Complaint that she did not consent, Compl. ¶¶ 13, 28, 46, "the

21   Court need not accept as true any allegations contradicted by matters properly subject to judicial

22   notice or by exhibit or that are merely conclusory, unwarranted deductions of fact, or

23   unreasonable inferences."  *Garcia*, 78 F. Supp. 3d at 1136 (internal quotations removed).

24           Here, Keurig's Privacy Policy was conspicuously hyperlinked on the bottom of

25   website—an undisputable and public fact that is subject to judicial notice.  *See* RJN at Ex. 1.

26   Through the website's Privacy Policy, Plaintiff was on notice that the website used third-party

27   service providers and technologies; the Privacy Policy states that Keurig "use[s] service

28

1   providers to help us operate and improve the Services, such as for data hosting and maintenance,

2   analytics, customer care, marketing, payment processing, order fulfillment, and security

3   operations."  RJN at Exs. 2, 3; *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1030 (N.D.

4   Cal. 2014) (granting Yahoo's motion to dismiss claim under Wiretap Act because email users

5   agreed to terms of use and privacy policy); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078,

6   1092 (N.D. Cal. 2018) (dismissing invasion of privacy claim finding plaintiff did not have a

7   reasonable expectation of privacy because he consented to the sharing of his geolocation data

8   with perfect strangers).

9        Further, Plaintiff cannot rely upon the Ninth Circuit's decision in *Javier* to avoid

10   dismissal based upon her own provision of consent.  In *Javier*, the Ninth Circuit's holding was

11   narrow – that a party cannot *retroactively* consent under CIPA.[12]  2022 WL 1744107, at *2.

12   Here, by visiting Keurig's website, Plaintiff was necessarily confronted with a conspicuously

13   linked Privacy Policy, thereby providing prior consent (assuming arguendo that CIPA even

14   applies, which it does not).

15        Finally, as a self-proclaimed "consumer privacy advocate," it is implausible for Plaintiff

16   to contend that she was not aware of privacy policies generally or on notice of Keurig's Privacy

17   Policies.  Thus, dismissal of the CIPA claim because of Plaintiff's acceptance of the Privacy

18   Policies is also appropriate.

19   **IV.    <u>CONCLUSION</u>**

20        For the foregoing reasons, Keurig respectfully requests that this Court dismiss Plaintiff's

21   Complaint in its entirety.  Further, because Plaintiff cannot amend her Complaint to assert viable

22   causes of actions, given her own allegations to date, the documents referenced in her Complaint,

23   and judicially noticeable documents, the dismissal should be with prejudice.

24

25

26

---

27   [12] The Court in *Hot Topic* acknowledged the narrow ruling of *Javier*: "The Ninth Circuit's
unpublished decision in [*Javier*] appears to have opened the floodgates for these cases, an

28   unfortunate unintended consequence of *a brief, narrow ruling limited to the issue of prior consent*."  2023 WL 2026994, at *4 n.6 (emphasis added).

DATED: March 7, 2023

By:   */s/ Becca J. Wahlquist*
Becca J. Wahlquist (SBN 215948)
bwahlquist@kelleydrye.com
Victor Sandoval (SBN 344461)
vsandoval@kelleydrye.com
KELLEY DRYE & WARREN
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901

Lauri Mazzuchetti (*pro hac vice* forthcoming)
lmazzuchetti@kelleydrye.com
KELLEY DRYE & WARREN
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

*Attorneys for Defendant*
*Keurig Green Mountain, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 7, 2023, I electronically filed the foregoing **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM IN SUPPORT** with the United States District Court for the Northern District of California by using the CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.

DATED: March 7, 2023                    Respectfully submitted.

                                    By:   */s/ Becca J. Wahlquist*
                                          Becca J. Wahlquist
                                          (SBN 215948)