**KELLEY DRYE & WARREN LLP**
Becca J. Wahlquist (SBN 215948)
bwahlquist@kelleydrye.com
Victor J. Sandoval (SBN 344461)
vsandoval@kelleydrye.com
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 547-4900
Fax: (213) 547-4901

**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*Pro Hac Vice*)
lmazzuchetti@kelleydrye.com
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950

*Attorneys for Defendant*
*Keurig Green Mountain, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONYA VALENZUELA, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>KEURIG GREEN MOUNTAIN, INC., a Delaware corporation d/b/a KEURIG.COM; and DOES 1 through 25, inclusive,<br><br>      Defendants. | Case No. 3:22-cv-09042<br><br>Assigned to Hon. Jacqueline Scott Corley<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM IN SUPPORT**<br><br>[Request for Judicial Notice and Proposed Order filed concurrently]<br><br>Hearing: Thursday, May 4, 2023<br>Time: 10 a.m.<br>Location: Courtroom 8 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday, May 4, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 8 of the United States District Court for the Northern District of California, before the Honorable Jacqueline Scott Corley, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, Defendant Keurig Green Mountain, Inc. will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing the First Amended Complaint and claims therein of Plaintiff Sonya Valenzuela with prejudice for failure to state a claim upon which relief may be granted.

The basis for this Motion is that it is clear from the face of the First Amended Complaint, the documents referenced therein, and judicially noticeable materials that Plaintiff failed to adequately plead a claim under Sections 631(a) and 632.7 of the California Invasion of Privacy Act. The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, all other materials supporting the Motion or the Reply filed in support thereof, and such arguments and authorities as may be presented at or before the hearing.

DATED: March 30, 2023

By:  */s/ Lauri A. Mazzuchetti*

Lauri A. Mazzuchetti (*pro hac vice*)
lmazzuchetti@kelleydrye.com
KELLEY DRYE & WARREN
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

Becca J. Wahlquist (SBN 215948)
bwahlquist@kelleydrye.com
Victor Sandoval (SBN 344461)
vsandoval@kelleydrye.com
KELLEY DRYE & WARREN
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901

*Attorneys for Defendant*
*Keurig Green Mountain, Inc.*

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3  I.      INTRODUCTION ................................................................ 1

4  II.     BACKGROUND AND PLAINTIFF'S ALLEGATIONS ................................. 3

5          A.    Plaintiff's Many "Chat" Complaints............................... 3

6          B.    Plaintiff's FAC ................................................ 4

7          C.    Plaintiff's Agreement To The Website's Privacy Policy .......... 6

8  III.    ARGUMENT ................................................................ 8

9          A.    Plaintiff Fails to State a Valid Claim Under Section 631 ....... 8

10               1.    Keurig Was the Intended Recipient of Plaintiff's Communication, Which Defeats the Section 631(a) Claim................. 9

11

12               2.    The Section 631(a) Claim Fails Because Plaintiff Has Not Pled Use of a Telegraph or Telephone .......................... 13

13               3.    Plaintiff Has Not Adequately Pled Any Unauthorized Connection of a Communication While In Transit ....................... 15

14

15               4.    Plaintiff Otherwise Fails to State a Claim under Section 631(a) ........... 18

16         B.    Plaintiff Fails to State a Valid Claim Under Section 632.7 ....... 19

17               1.    Section 632.7 Exclusively Applies to Communications Between Telephones, Which Plaintiff Cannot Allege Here ................... 19

18               2.    Plaintiff's Section 632.7 Must Be Dismissed Because He Does Not Allege that the Chat Was Between Two Telephones................ 21

19

20               3.    In Sending Written Messages Necessarily "Recorded" By The Recipient, Plaintiffs Consented To That "Recording".............. 22

21         C.    Keurig's Privacy Policies Captured Consent to the Complained-Of Practice ....................................................... 23

22

23  IV.     CONCLUSION .............................................................. 25

24

25

26

27

28

CASE NO. 3:22-CV-09042-JSC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................8, 12, 13, 18

5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................8, 12, 13, 18

6

7

*Bunnell v. Motion Picture Ass'n of Am.*,
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) ...............................................16

8

*Byars v. Goodyear Tire Rubber & Co.*,
  No. 5:22-cv-01358, 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ....................12, 21

9

10

*Byars v. Hot Topic, Inc.*,
  No. 5:22-cv-01652, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) .............................. *passim*

11

*Campbell v. Facebook, Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ...............................................12

12

13

*Clark v. California Dep't of Forestry and Fire Prot.*,
  212 F. Supp. 3d 808 (N.D. Cal. 2016) ...............................................8

14

*Cody v. Boscov's*,
  -- F. Supp. 3d --, No. 8:22-cv-01434, 2023 WL 2338302 (C.D. Cal. Mar. 2, 2023) ...................................................................... *passim*

15

16

*Esparza v. Lenox Corp.*,
  2023 WL 2541352 (N.D. Cal. Mar. 16, 2023).......................9, 10, 11, 12

17

18

*Garcia v. Enter. Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...............................................24

19

*Glob. Policy Partners, LLC v. Yessin*,
  686 F. Supp. 2d 631 (E.D. Va. 2009) ...............................................17

20

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ...............................................24

21

22

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ...............................................14, 19

23

24

*In re Google Inc.*,
  No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sep. 26, 2013).....................8, 14, 23

25

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................................2, 10, 11

26

*Harris v. Cnty. of Orange*,
  682 F.3d 1126 (9th Cir. 2012) ...............................................6

27

28

*Javier v. Assurance IQ, LLC,*
    No. 21-16351, 2022 WL 1744107 (9th Cir. 2022) ...............................14, 15, 17, 25

*Johnson v. Blue Nile, Inc.,*
    No. 3:20-cv-08183, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021).........................11

*Konop v. Hawaiin Airlines, Inc.,*
    302 F.3d 868 (9th Cir. 2002) ...........................................................16, 17, 18

*Licea v. American Eagle Outfitters, Inc.,*
    -- F. Supp. 3d --, No. 22-cv-1702, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023)........... *passim*

*Licea v. Caraway Home Inc.,*
    No. 5:22-cv-01791, 2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) .........................2, 3

*Licea v. Cinmar, LLC,*
    No. 22-cv-6454, 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023).......................... *passim*

*Lindsay-Stern v. Garamszegi,*
    No. 14-cv-01970, 2016 WL 11745948 (C.D. Ca. Oct. 13, 2016)..........................17

*Mastel v. Miniclip SA,*
    549 F. Supp. 3d 1129 (E.D. Cal. 2021)........................................... *passim*

*Mintz v. Mark Bartelstein & Assocs. Inc.,*
    906 F. Supp. 2d 1017 (C.D. Cal. 2012) ...............................................17

*Mireskandari v. Daily Mail,*
    No. 12-cv-02943, 2013 WL 12129559 (C.D. Cal. Jul. 30, 2013)..........................15

*Moledina v. Marriott Int'l, Inc.,*
    No. 22-cv-03059, 2022 WL 16630276 (C.D. Cal. Oct. 17, 2022) .........................22

*Montantes v. Inventure Foods,*
    No. 14-cv-1128, 2014 WL 3305578 (C.D. Cal. July 2, 2014)...................20, 21, 23

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.,*
    No. 12-cv-01685, 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016)...................22, 23

*NovelPoster v. Javitch Canfield Grp.,*
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ...............................................17

*People v. Black,*
    32 Cal.3d 1 (1982) ..................................................................20

*People v. Nakai,*
    183 Cal. App. 4th 499 (2010) .......................................................23

*Ribas v. Clark,*
    38 Cal. 3d 355 (Cal. 1985).............................................................9

*Rogers v. Ulrich,*
    52 Cal. App. 3d 894 (1975) ...........................................................10

*Smith v. LoanMe, Inc.*,
   11 Cal.5th 183 (2021) ......................................................................................20, 23

*United States v. Corinthian Colls*,
   655 F.3d 984 (9th Cir. 2011) ........................................................................................6

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..........................................................16, 17, 18

*Warden v. Kahn*,
   99 Cal. App. 3d 805 (1979) ...........................................................................................9

*Williams v. What If Holdings*,
   No. 3:22-cv-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........................... *passim*

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..........................................................................24

*Yale v. Clicktale, Inc.*,
   No. 3:20-cv-07575, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)...............................11

**Statutes**

Cal. Civ. Code §§ 1798.100(a)-(d) ....................................................................................1

Cal. Civ. Proc. Code § 340(a) ...........................................................................................5

Cal. Pen. Code § 631(a) ........................................................................................... *passim*

Cal. Pen. Code § 632.7(a) .......................................................................................20, 22

Cal. Pen. Code §§ 638.50-52 ...........................................................................................20

Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523 ................16

## I.   **INTRODUCTION**

This action, commenced by Sonya Valenzuela ("Plaintiff") is just one splash of a tsunami of litigation filed by her counsel.  Plaintiff's attorneys in the past eight months have filed *at least ninety* nearly-identical, cookie cutter complaints alleging wiretapping claims under the California Invasion of Privacy Act ("CIPA") against various companies that offer chat features on their websites.  Plaintiff's theory is that by using vendor-provided software tools to enable consumers to communicate via chat features on their websites, companies such as Defendant Keurig Green Mountain, Inc. ("Keurig") commit, or aid and abet, a criminal wiretap every time a consumer engages in an innocuous and voluntary interaction with a website chat feature.  If this theory sounds far-fetched, it should.  It is difficult to imagine that companies, such as Keurig, can on the one hand comply with the California Consumer Privacy Act ("CCPA")[1] – one of the most robust privacy laws in the nation that specifically regulates any data disclosures (including via the use of internet tools) to another party – but at the same time be committing, or aiding and abetting, a wiretap.

In response to Keurig's initial motion to dismiss, Plaintiff filed the First Amended Complaint ("FAC"), in an apparent effort to cure the deficiencies highlighted by Keurig in that motion.  That effort has failed.  There is nothing in the FAC that warrants a different result from the one reached by multiple California federal courts, which have rejected – at the pleading stage – the very claims that Plaintiff seeks to assert here.  For example, courts within the United States District Court for the Central District of California recently dismissed similar CIPA complaints brought by Plaintiff's attorneys in the following cases:

- *Byars v. Hot Topic, Inc.*, No. 5:22-cv-01652, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) (Judge Bernal) ("*Hot Topic*") (granting Motion to Dismiss);
- *Cody v. Boscov's*, -- F. Supp. 3d --, No. 8:22-cv-01434, 2023 WL 2338302 (C.D. Cal. Mar. 2, 2023) (Judge Sykes) ("*Boscov's*") (granting Motion to Dismiss);
- *Licea v. American Eagle Outfitters, Inc.,* -- F. Supp. 3d --, No. 22-cv-1702, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) (Judge Fitzgerald) ("*American Eagle*") (granting Motion to Dismiss); and
- *Licea v. Cinmar, LLC,* No. 22-cv-6454, 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) (Judge Fitzgerald) ("*Cinmar*") (granting Motion to Dismiss).

---

[1] Cal. Civ. Code §§ 1798.100(a)-(d).

In *Hot Topic*, District Judge Jesus Bernal dismissed one of these "cookie cutter" complaints, holding it to be "a remarkable illustration of conclusory pleading."  2023 WL 2026994, at *7.  Judge Bernal further held that CIPA does not extend to the use of a third party vendor to "record and analyze [defendant's] own data in aid of [defendant's] business."[2]  *Id.* at *10.  Judge Sunshine Sykes reached the same result in *Boscov's* on the plaintiff's Section 631(a) claim.  Judge Fitzgerald dismissed on the additional ground that the interception in transit requirement for wiretapping claims was insufficiently pled.  *See* 2023 WL 2469630, at *10.  Many of the allegations asserted in *Hot Topic*, *Boscov's, American Eagle,* and *Cinmar* were copied almost verbatim by Plaintiff here, and the reasoning regarding Section 631 claims applies equally here.

With respect to Plaintiff's newly-asserted claim under Section 632.7 of CIPA, this claim has likewise been dismissed where, as here, Plaintiff does not allege a communication occurred between the "narrow set" of telephone technology to which this provision applies.  *Cinmar*, 2023 2415592, at *13; *see also Hot Topic*, 2023 WL 2026994, at *11 (dismissing Section 632.7 claim where none of the five "exclusive . . . types of calls" were at issue).

Notably, cases dismissing CIPA claims in the context of chat boxes have relied upon recent decisions from this District that also dismissed similar CIPA claims at the pleading stage in analogous contexts involving software tools used on websites.  *See Williams v. What If Holdings*, No. 3:22-cv-03780, 2022 WL 17869275, at *1-4 (N.D. Cal. Dec. 22, 2022) (Judge Alsup); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) (Judge Beeler).  For the same reasons as articulated in *Hot Topic*, *Cinmar*, *American Eagle*, *Williams* and *Graham*, this Court too should dismiss Plaintiff's FAC under Rule 12(b)(6).  In addition, there are other pleading failures identified herein that also warrant dismissal.

---

[2] In *Hot Topic*, in addition to ruling that the plaintiff's complaint was subject to dismissal under Rule 12(b)(6), the Court also ruled *sua sponte* that the plaintiff failed to plead factual allegations that could support subject matter jurisdiction. *Id.* at *5-7.  Further, in another of the "tsunami" cases brought against Caraway Home, Inc., Judge Bernal dismissed the complaint on the basis that the plaintiff failed to adequately plead factual allegations that could establish either subject matter jurisdiction or personal jurisdiction.  *Licea v. Caraway Home Inc.*, No. 5:22-cv-01791, 2023 WL 1999496, at *5-10 (C.D. Cal. Feb. 9, 2023).

## II.   BACKGROUND AND PLAINTIFF'S ALLEGATIONS

### A.   Plaintiff's Many "Chat" Complaints

Since the last week of July 2022, Plaintiff's counsel, Pacific Trial Attorneys, have filed at least ninety nearly-identical class action complaints, each purporting to allege CIPA claims against companies that offer chat features on their websites.[3] *See* Request for Judicial Notice ("RJN") at 3-7.  The majority of complaints in these lawsuits, brought on behalf of Plaintiff Valenzuela and a few other serial plaintiffs (including Jose Licea, Miguel Licea, Miguel Esparza, Arisha Byars and Annette Cody), are identical, except for the plaintiff (in some instances), the targeted defendant, and the defendant's URL.  *Id.*  Only a handful of these complaints have been amended to include rudimentary information regarding the defendants' businesses.  Plaintiff Valenzuela has been the named plaintiff in at least *twenty-three* of these duplicative complaints, including in cases filed in the United States District Court for the Central District of California and the California Superior Courts for Los Angeles County, San Diego County, and Riverside County.[4]

---

[3] *See also Caraway Home Inc.*, 2023 WL 1999496, at *6 (commenting on a near identical complaint filed by counsel for Plaintiff, "[w]hy is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing? And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far. This case reached that point, and then blew past it."); *see also Hot Topic,* 2023 WL 2026994, at *5.

[4] *See* RJN at 3-4; *Licea and Valenzuela v. Cinmar, LLC*, No. 2:22-06454 (C.D. Cal.); *Valenzuela v. Aflac Inc.*, No. 2:22-cv-06348 (C.D. Cal.); *Valenzuela v. AIG Direct Ins. Servs. Inc.*, No. 5:22-cv-01561 (C.D. Cal.); *Valenzuela v. BJ's Wholesale Club, Inc.*, No. 2:22-cv-06378 (C.D. Cal.); *Valenzuela v. Carvana, LLC*, No. CVRI2204530 (Cal. Sup. Ct., Riverside Cty.); *Valenzuela v. CNO Services, LLC*, No. 5:22-cv-02084 (C.D. Cal.); *Valenzuela v. Dermacare LLC, d/b/a Bluechew.com*, No. 37-2022-00047405 (Cal. Sup. Ct., San Diego Cty.); *Valenzuela v. Engage3, Inc., d/b/a Engage3.com*, No. 30-2022-01297903 (Cal. Super. Ct., Orange Cty.); *Valenzuela v. Hims & Hers Health, Inc.*, No. 37-2022-00047422 (Cal. Sup. Ct., San Diego Cty.); *Valenzuela v. Kaspersky Lab, Inc.*, No. 2:22-cv-09157 (C.D. Cal.); *Valenzuela v. Kroger Co.*, No. 2:22-cv-06382 (C.D. Cal.); *Valenzuela v. Massage Envy Franchising LLC*, No. 2:22-cv-05817 (C.D. Cal.); *Valenzuela v. Michael Kors (USA), Inc.*, No. 2:22-cv-05902 (C.D. Cal.); *Valenzuela v. Nationwide Mutual Ins. Co.*, No. 2:22-cv-06177 (C.D. Cal.); *Valenzuela v. Papa Murphy's Int'l, LLC*, No. 5:22-cv-01789 (C.D. Cal.); *Valenzuela v. Pear Sports, LLC*, No. CVRI2204529 (Cal. Sup. Ct., Riverside Cty.); *Valenzuela v. Pierre Fabre USA, Inc.*, No. 3:22-cv-02079 (S.D. Cal.); *Valenzuela v. Rugs USA LLC*, No. 30-2022-01294507 (Cal. Sup. Ct., Orange Cty.); *Valenzuela v. Under Armour, Inc.*, No. 22STCV24206 (Cal. Super. Ct., LA Cty.); *Valenzuela v. VF Outdoor LLC, d/b/a Smartwool.com*, No. 37-2022-00046954 (Cal. Super. Ct., San Diego Cty.); *Valenzuela v. West Marine Products Inc.*, No. 5:22-cv-02082 (C.D. Cal.).

In a recent decision addressing one of the virtually identical complaints, Judge Bernal made the following observation:

> [T]he Court acknowledges the central dynamic in this litigation, underscoring all of the deficiencies in the [Complaint]: Plaintiff, and her counsel, Scott Ferrell, are serial litigants bringing numerous "cookie cutter" lawsuits under CIPA against various businesses that operate websites. As of December 9, 2022, Mr. Ferrell appears to have filed at least 58 of these virtually identical lawsuits. . . . This Court alone has six virtually identical lawsuits filed by Plaintiff's Counsel on its docket. . . . Mr. Ferrell appears to work with multiple "tester" plaintiffs to drum up these lawsuits, with Mr. Licea and Ms. Byars serving as his primary vehicles for litigation. The cases bear strong echoes of serial Americans with Disabilities Act (ADA) litigation, in which Mr. Ferrell has also engaged.
>
> Initiating legitimate litigation generally requires a considerable expenditure of time: in order to establish jurisdiction and state a claim for relief, a plaintiff must plead specific facts arising out of a specific encounter with a specific defendant. As the saying goes, time is also money. So when the goal is to file as many lawsuits as possible in the least amount of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to write the original template in such a way that hardly anything needs to be swapped out. Sometimes a plaintiff can get away with this, particularly if a defendant is willing to offer a quick cash settlement. But other defendants may not roll over so easily, and raise some fundamental questions, not least: Why is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing? And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far.

*Hot Topic, Inc.*, 2023 WL 2026994, *4-5 (internal citations omitted).[5]

**B.  Plaintiff's FAC**

Plaintiff commenced this action on December 21, 2022. (ECF 1.) On March 7, 2023, Keurig filed a motion to dismiss. (ECF 12.) Rather than oppose Keurig's motion, Plaintiff filed

---

[5] Judge Bernal commented that "[p]laintiff goes as far as to compare herself to Rosa Parks, who she claims was acting as a 'tester' when she initiated the Montgomery Bus Boycott in 1955. Plaintiff's self-aggrandizing comparison trivializes Rosa Parks, a key accelerant of the civil rights movement. It was not well-received by the Court." *Id.* at *2 n.4 (internal citations omitted). Plaintiff here made the identical allegation comparing herself with Ms. Parks in her initial complaint, but has since removed it. *Compare* Compl. ¶¶ 16, 17 and n.3 *with* FAC generally.

the FAC.  (ECF 17.)  The FAC asserts two causes of action under CIPA.  FAC ¶¶ 31-38 (Section 631(a)), 39-44 (Section 632.7).  Plaintiff alleges that "[w]hile physically within California during the class period, Plaintiff visited Defendant's website and conducted a *brief* conversation with an agent of Defendant through the website chat feature."  *Id.* ¶ 4 (emphasis added).  Despite having the opportunity to amend her Complaint, Plaintiff *still* does not allege the date of her supposed visit to the Keurig website,[6] nor does she allege any information or dialogue that was exchanged during her purported "brief conversation."  *See generally id.*  While Plaintiff describes conversations between unnamed visitors and the coffee retailer's website as "private," and/or "personal," she does not allege that she provided any private or personal information to the Keurig Virtual Assistant during her alleged "brief" chat.[7]  *See id.* at Introduction, ¶¶ 13.

As in her initial complaint, along with other complaints filed by Plaintiff and Pacific Trial Attorneys, Plaintiff merely identifies the statutory elements on Section 631(a) of CIPA, and then alleges that Keurig violated each.  She contends that "Defendant enables and allows an independent third party to eavesdrop on all such conversations" and claims this is achieved by embedding code into Defendant's chat feature "to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors." *Id*. ¶¶ 11, 13.  Plaintiff also makes conclusory allegations that the chat was "monitored," "store[d]," "recorded," and/or "intercepted," and that these actions all happened "in real time" and/or "during transmission."  *Id*. ¶¶ 4, 10, 13, 14, 18, 23, 28, 34, 43.

In the FAC, Plaintiff alleges that Keurig's third-party vendor "then exploits and monetizes that data by sharing it with other third parties, who use the private chat data to bombard the unsuspecting visitor with targeted marketing[,]" *id.* at Introduction, but fails to allege who the vendor shares the data with or provide any basis for this conclusory allegation.

---

[6]  Nor does Plaintiff indicate what she means by "during the class period."  *Id.*  CIPA has a one-year statute of limitations.  Cal. Civ. Proc. Code § 340(a).  Because Plaintiff did not indicate the date of the alleged violation, Keurig must reserve its right to challenge Plaintiff's claims on statute of limitations grounds.

[7]  In her initial complaint, Plaintiff described her conversations as "*deeply* personal" and/or "*highly sensitive*" but appears to abandon these claims in the FAC. *Compare* Compl. ¶¶ 12, 14, 15 *with* FAC ¶ 13.

1   Plaintiff also claims that "[l]ive chat transcripts are the gold mines of customer service. At your

2   fingertips, you have valuable customer insight . . . When people are chatting, you have direct

3   access to their exact pain points." *Id.* ¶ 11 (emphasis removed).  While Plaintiff theorizes that

4   chat transcripts are *capable* of being valuable, Plaintiff does not plausibly allege that a specific

5   third-party software vendor actually monetized Plaintiff's information or chat session because

6   Plaintiff does not allege any information concerning any "private chat data" that she purportedly

7   shared, nor does she plead with whom the vendor is alleged to have shared the information.  *See*

8   *generally id.*

9        With respect to Plaintiff's asserted violation of CIPA Section 632.7, which applies

10  exclusively to communications between specifically identified types of telephones, Plaintiff

11  claims that she used a "smart phone" to visit Keurig's website, FAC ¶ 21.  Plaintiff asserts this

12  use satisfies the requirement that a communication occurred within the purview of this statutory

13  provision, notwithstanding that the FAC is silent regarding the type of technology that Keurig

14  used to receive the alleged communication.  Instead, Plaintiff merely alleges that "Defendant's

15  communication from the chat feature on its website is transmitted via telephony subject to the

16  mandates and prohibitions of Section 632.7."  FAC ¶ 41.

17  **C.**   **Plaintiff's Agreement To The Website's Privacy Policy**

18       While Plaintiff alleges that "Defendant neither informed visitors of this conduct nor

19  obtained their consent to these intrusions[,]" *id.* ¶ 13; *see also* Introduction, ¶ 4, judicially

20  noticeable documents show otherwise.  Keurig's privacy policy is visibly hyperlinked on the

21  website that Plaintiff visited.  *See* RJN at Ex. 1.[8]

22

23

24  ──────────────
    [8] This Court may consider and take judicial notice of Keurig's website, including the Privacy
25  Policies, on this Motion because Plaintiff incorporates the website and the Privacy Policy into
    her FAC and it is central to her claims.  *See, e.g.*, FAC at Introduction, ¶¶ 4, 19; *Harris v. Cnty.*
26  *of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citation omitted) ("Moreover, documents not
    attached to a complaint may be considered if no party questions their authenticity and the
27  complaint relies on those documents"); *United States v. Corinthian Colls*, 655 F.3d 984, 999 (9th
    Cir. 2011) (the court may consider unattached evidence on a Rule 12(b)(6) motion to dismiss "if
28  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and
    (3) no party questions the authenticity of the document.").

Because Plaintiff does not allege the date of her visit, there are two Keurig privacy policies that could apply to her visit, which were in effect during the one-year statutory period prior to the initial complaint filing on December 21, 2022, ECF 1.  The first was effective from July 6, 2021 through January 26, 2022 (the "July 6, 2021 Privacy Policy") and the second was effective January 27, 2022 through January 5, 2023 (the "January 27, 2022 Privacy Policy," together the "Privacy Policies").  Under the "How We Share Your Personal Information" section, the Privacy Policies each stated that: "[w]e use service providers to help us operate and improve the Services, such as for data hosting and maintenance, analytics, customer care, marketing, payment processing, order fulfillment, and security operations."  RJN at Exs. 2, 3.

Further, the Privacy Policies stated that:

> **PERSONAL INFORMATION WE COLLECT**
> There are several ways we may obtain information about you, including through (A) information you provide to us directly; (B) information that we automatically collect; and (C) information we receive from third parties.
> …
>
> **Personal Information You Provide**
> KDP collects Personal Information when you choose to share it with us, such as:
>> ***Personal Information you provide when you … contact us.*** … [W]hen you contact us, we may monitor and record your conversation with the KDP representative (where permitted by law).
>> …
>> ***Personal Information you provide for customer support*** We collect your feedback and questions that you provide to us for customer support. In answering your questions, we may collect supporting data from your device.
> …

RJN at Ex. 2; *see also* Ex. 3 (same).

The Privacy Policies provide clear notice that information shared with the website by the user may be collected, recorded, and shared with third-party service providers for the legitimate and routine business reasons listed.  *Id.*

1

## III.   ARGUMENT

Rule 12(b)(6) requires dismissal where a complaint fails to allege sufficient facts "to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007), and presents nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is facially plausible when a plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. California Dep't of Forestry and Fire Prot.*, 212 F. Supp. 3d 808, 811 (N.D. Cal. 2016) (quoting *Ashcroft*, 556 U.S. at 678). "[C]ourts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). "And even where facts are accepted as true, 'a plaintiff may plead [her]self out of court' if [s]he 'pleads facts which establish that [s]he cannot prevail on h[er] . . . claim.'" *Id.* (quoting *Weisbusch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).

Applying this standard, Plaintiff's claims here should be dismissed with prejudice.

### A.   Plaintiff Fails to State a Valid Claim Under Section 631

The California Supreme Court has explained that Section 631(a) of CIPA makes unlawful "three distinct and mutually independent patterns of conduct: [1] intentional wiretapping [of any telegraph or telephone], [2] wilfully (*sic*) attempting to learn the *contents* or meaning of a *communication in transit* over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Williams*, 2022 WL 17869275 at *2 (quoting *Tavernetti v. Superior Court of San Diego County*, 22 Cal. 3d 187, 192 (Cal. 1978) (emphasis added)); *see also* Cal. Penal Code § 631(a); *accord Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sep. 26, 2013). Section 631(a) includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to

1   unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Mastel*,

2   549 F. Supp. 3d at 1134 (quoting Cal. Penal Code § 631(a)) (internal quotations removed).

3   To borrow from Judge Bernal's description, "[i]n a remarkable illustration of conclusory

4   pleading," *Hot Topic*, 2023 WL 2026994, at *7, Plaintiff here merely restates the statutory

5   components of Section 631(a) in her FAC, and alleges that Keurig has engaged in each of the

6   different types of conduct covered. *See* FAC ¶ 31. As set forth more fully below, Plaintiff's

7   Section 631(a) claim should be dismissed because she has not pled facts that, if proven, could

8   support a violation of any of these provisions of CIPA.

### 1.   Keurig Was the Intended Recipient of Plaintiff's Communication, Which Defeats the Section 631(a) Claim

11   Section 631(a) provides a cause of action only for "eavesdropping" by way of wiretap –

12   that is, "the secret monitoring of conversations by *third parties*." *Ribas v. Clark*, 38 Cal. 3d 355,

13   359 (Cal. 1985) (emphasis added). Plaintiff's CIPA claim is predicated entirely upon the theory

14   that the software tool that Keurig embedded on its website to offer a chat feature qualifies as a

15   "third-party" for purposes of any alleged eavesdropping on communications that Plaintiff had

16   with Keurig allegedly using that chat feature. FAC ¶¶ 11, 13. This claim lacks merit because

17   Plaintiff's FAC concedes that Keurig was the intended recipient of her communication and

18   because Plaintiff fails to plead any specific "private" information that was purportedly monetized

19   by a vendor or other third party. *Id.* at Introduction, ¶ 4.

20   (a)   A Party Cannot Eavesdrop On Its Own Communication

21   The law is well-settled that "[p]arties to a conversation cannot eavesdrop on their own

22   conversation, so no other part of Section 631(a) is applicable" with respect to the intended

23   recipient of a communication. *Williams*, 2022 WL 17869275, at *2; *see also Esparza v. Lenox*

24   *Corp.*, 2023 WL 2541352, at *2 (N.D. Cal. Mar. 16, 2023) ("*Lenox*"). As Judge Alsup opined in

25   *Williams* and *Lenox* and Judge Bernal reaffirmed in *Hot Topic*, California state and federal courts

26   have long made clear this fundamental aspect of Section 631(a). *See id.*; *Hot Topic*, 2023 WL

27   2026994, at *8; *see also Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (finding that Section

28

631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation"); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (holding that Section 631 does not apply to a party to a conversation because "it is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation"); *Graham*, 533 F. Supp. 3d at 831 (holding that "a party to a communication can record it (and it is not eavesdropping when it does)").

As Judge Bernal, Judge Alsup and Judge Fitzgerald recently opined, these rulings are all consistent with Ninth Circuit precedent, which recognize a direct party exemption under Section 631(a). *Hot Topic*, 2023 WL 2026994, *8; *Williams*, 2022 WL 17869275 at *2-3; *Lenox*, 2023 WL 2541352, at *3, *American Eagle*, 2023 WL 2469630, at *8; *Cinmar*, 2023 WL 2415592, at *7 ("Federal courts have routinely affirmed the holding in *Rogers* that a party cannot eavesdrop on its own conversation."). Judge Sykes of the Central District of California recently reiterated this principle in another case brought by Pacific Trial Attorneys asserting the same allegations as Plaintiff Valenzuela. *Boscov's*, 2023 WL 2338302 at *2.  The Court in *Boscov's* held that "Defendant was a party to the customer chats at issue in Plaintiff's complaint. Thus, under this well-established 'party exception', Plaintiff's claim that Defendant is directly liable for wiretapping fails and amendment would be futile." *Id.*  In this case, Plaintiff alleges she "conducted a brief conversation *with an agent of [Keurig]* through the website chat feature." FAC ¶ 4 (emphasis added).  Thus, Plaintiff concedes that Keurig was a party to the communication, which precludes liability under the first three prongs of Section 631(a).

> (b)   Keurig Did Not Aid Or Abet Any Alleged Violation of CIPA

In light of Keurig's participation in the alleged communication, the only possible basis for it to be liable under Section 631(a) is under an aiding and abetting theory, *i.e.*, the fourth prong of Section 631(a).  As California federal courts have recognized, because "parties to a conversation cannot eavesdrop on their own conversation," no other provision of Section 631(a) applies other than the aiding and abetting provision. *Williams*, 2022 WL 17869275, at *2; *Hot Topic*, 2023 WL 2026994, at *8-9; *see also American Eagle*, 2023 WL 2469630, at *7 ("It is

clear that Defendant was a party to the purported conversation with Plaintiff and, as such, cannot be held liable under the second clause of section 631(a).  However, Defendant can be held vicariously liable under the fourth clause if it assists a third party in violating the second clause of section 631(a).").  Plaintiff fails to plead any allegations to support any aiding and abetting theory of liability and the Section 631(a) claim should be dismissed.

(i)      Use of a Third-Party Software Tool Does Not Implicate CIPA

As the Courts held in *Williams*, *Lenox*, *Hot Topic*, *American Eagle*, and *Cinmar*, a plaintiff cannot proceed on an aiding and abetting theory predicated upon the mere use of a software tool—as Plaintiff seeks to do here.  In *Williams*, the plaintiff brought Section 631(a) claims against a website owner and a software company, which offered a software that the website owner had embedded on its website.  2022 WL 17869275, at *1.  The software allegedly "had the ability to document a website visitor's keystrokes and mouse movements as they happened and then create a video replay of the website visitor's interactions with the website." *Id.*  The Court opined that to determine whether an aiding and abetting claim could be asserted against the website owner, "the question boils down to whether [the software provider] was an independent third party hired to eavesdrop on [the website owner]'s communications, or whether [the vendor]'s software was merely a tool that [the website owner] used to record its own communications with [the] plaintiff."  *Id.* at *3.  The Court found that "there are no facts to suggest that [the software provider] intercepted and used the data itself."  *Id.*  For this reason, the Court dismissed the claims and held the software provider tool at issue more resembled that of a physical recorder than an eavesdropper.  *Id.* at *4; *see also Graham*, 533 F. Supp. 3d at 832 (dismissing a CIPA claim where there were "no allegations [] that [the vendor] intercepted and used the data itself"); *Yale v. Clicktale, Inc.*, No. 3:20-cv-07575, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same); *Johnson v. Blue Nile, Inc.*, No. 3:20-cv-08183, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (same).

In *Hot Topic*, the Court relied heavily on *Williams* to dismiss a Section 631(a) claim brought by Pacific Trial Attorneys that was predicated on similar allegations to the ones asserted

by Plaintiff here about a website's use of a chat tool.  Specifically, Judge Bernal found that

allegations that "Defendant allows at least one independent third-party vendor (on information

and belief, Salesforce) to access its chat communications" and that such third party "harvest[s]

data for financial gain," constituted "a mere conclusion" that must be "disregarded under

*Twombly* and *Iqbal*."  2023 WL 2026994, at *10; *see also Lenox*, 2023 WL 2541352, at *3.  The

Court held that the complaint was subject to dismissal under Rule 12(b)(6) because "the clear

inference is that the third-party vendor is engaging in precisely the sort of 'routine' data

recordation in *Williams*: the primary function of the vendor appears to be 'storing transcripts of

Defendant's chat communications with 'unsuspecting' website visitors.'"  *Hot Topic*, 2023 WL

2026994, at *10.

       In *Boscov's*, the Court dismissed a similar complaint that relied on the same allegations

to the ones asserted here because "[p]laintiff must provide facts suggesting that [third-parties] are

recording [d]efendant's customers' information for some use or potential future use beyond

simply supplying this information back to [d]efendant" and had not done so.  *Boscov's*, 2023 WL

2338302.  In *American Eagle* and *Cinmar*, the Court found that "Plaintiff fails to plead that the

alleged third party acted independently from Defendant as to constitute an unannounced auditor

under California law."[9]  2023 WL 2469630, at *8.

       Plaintiff here alleges that Keurig "allowed a third-party to covertly embed code into

Defendant's chat feature."  FAC ¶ 13.  This is the same type of allegation that the Courts rejected

---

[9] *Byars v. Goodyear Tire Rubber & Co.*, No. 5:22-cv-01358, 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ("*Goodyear Tire*") is not to the contrary because in that case, the defendant did not seek dismissal on the direct-party exemption. *See Hot Topic*, 2023 WL 2026994, at *11 n.11. Moreover, as noted above, Judge Sykes recently dismissed a CIPA claim on this very ground. *See Boscov's*, 2023 WL 2338302. In any event, *Goodyear Tire* is not persuasive because although the Court acknowledged the four sections of CIPA, it analyzed them all together and did not perform the type of detailed analysis conducted by Judges Alsup and Bernal discussed above.  2023 WL 1788553, at *4. Further, in *Goodyear Tire*, the court largely relied upon *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014), which is inapposite here because Facebook was not a party to the communication at issue and the complaint provided factual allegations regarding a detailed source code, making allegations about how a third party interception was achieved.  *See id.*  Further, the court in *Hot Topic* respectfully disagreed with the *Goodyear Tire* opinion's persuasiveness as authority on other grounds and declined to follow it. 2023 WL 2026994, at *11.  And the court issuing *American Eagle* and *Cinmar* rendered its decision more than a month after the *Goodyear* decision issued, and did not follow that decision.

in *Hot Topic, Boscov's*, and *American Eagle* and this Court should similarly find these allegations to be legally deficient.

        (ii)    Plaintiff Fails To Allege Independent Use of Data Allegedly Collected By The Software Provider

In an effort to moot Keurig's initial motion to dismiss, Plaintiff alleges that "Defendant [and] the Third Party Spyware Company . . . all profit from secretly exploiting the private chat data through targeted social media advertising" and that the "Third Party Spyware Company" allegedly "monetizes" the use of chat data.  FAC ¶¶ 17-18.  These allegations do not save the FAC from dismissal because, as numerous courts have found, vague allegations concerning the purported financial benefit concerning the collection of certain data are insufficient to convert a service provider into a third-party eavesdropper under CIPA.  *See Cinmar*, 2023 WL 3415592, at *9 ("The bare allegations only suggest that the third party analyzed or used the data on behalf of or in tangent with Defendant.")  Moreover, there is not a single allegation regarding the information that Plaintiff provided to Keurig, how such information allegedly could have value, or how it was used.  In the absence of such allegations, Plaintiff's conclusory assertions regarding "monetization" constitute a "mere legal conclusion disregarded under *Twombly* and *Iqbal*.  *Byars*, 2023 WL 2026994, at *10.  Accordingly, Plaintiff's Section 631(a) claim should be dismissed on this ground alone.

        **2.**        **The Section 631(a) Claim Fails Because Plaintiff Has Not Pled Use of a Telegraph or Telephone**

Plaintiff's CIPA claim under Section 631(a)'s first prong fails for the additional reason that she did not, and cannot, plausibly allege that the purported communication at issue was made using a telegraph or telephone, as contemplated by Section 631(a).  Rather, she concedes that the communication was made over the internet, which is not covered under the first prong of Section 631(a).[10]

---

[10] Section 631(a)'s first prong makes unlawful, "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, . . . *with any telegraph or telephone* wire, line, cable, or instrument, including the

Indeed, courts have consistently held the first prong of Section 631(a) is "limited to communications passing over 'telegraph or telephone' wires, lines, or cables," *Mastel*, 549 F. Supp. 3d at 1135 (quoting *Matera v. Google*, No. 15-cv-04062, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016)), and, as the Court in *Williams* recently reaffirmed, "*does not apply in the context of the internet.*" 2022 WL 17869275, at *2 (emphasis added); *In re Google Inc.*, 2013 WL 5423918, at *20 (explaining that the first prong of CIPA is "limited to communications passing over 'telegraphic or telephone' wires, lines, or cables"); *accord In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825-26 (N.D. Cal. 2020) ("*Google Assistant*") (holding that CIPA claim under first prong must be dismissed if allegations do not show that technology at issue "operates using telegraph or telephone wires"). Further, the court in *American Eagle* confirmed that "the first clause of section 631(a) does not apply to communications with a smart phone or Wi-Fi-enabled laptop[.]" 2023 WL 2469630, at *5-6; *see also Cinmar*, 2023 WL 2415592, at *5-6.

Here, Plaintiff only alleges she "used a smart phone (a cellular telephone with integrated computers to enable web browsing)[,]" FAC ¶ 21, but this is inapposite, because the first section does not apply to wireless smart phones. Further, the alleged conversation took place using the computer technology, not the phone technology, as discussed *infra* Section B. Plaintiff merely conclusorily states "Defendant's chat communications from its website are transmitted to website visitors by either cellular telephony or landline telephony." *Id.* ¶ 22. Plaintiff cannot plausibly plead that Keurig or a third party vendor's conduct utilizes telegraph or telephone wires, lines, or cables. Instead, Plaintiff's claim arises entirely out of internet activity. *See, e.g.*, *id.* at Introduction, ¶¶ 4, 11, 13-17, 19-21. Plaintiff does not and cannot assert a claim under the first prong of Section 631(a).[11]

---

wire, line, cable, or instrument of any internal telephonic communication system …" Cal. Penal Code § 631(a) (emphasis added).

[11] In her FAC, Plaintiff cites to *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. 2022) to incorrectly suggest that the first prong of Section 631(a) applies to internet communications. FAC ¶ 32 ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication without the consent of all parties to the communication."). This citation from *Javier*, however, was made in the context of the second

1

2

### 3.   Plaintiff Has Not Adequately Pled Any Unauthorized Connection of a Communication While In Transit

3

4   Plaintiff's CIPA claim under Section 631(a)'s second prong fails for an additional reason:

5   to satisfy this prong, plaintiff must allege that defendant "willfully and without the consent of all

6   parties to the communication, or in any *unauthorized manner*, read, or attempted to read, or to

7   learn the contents or meaning of any message, report, or communication while the same was *in*

8   *transit or passing over* any wire, line, or cable, or was being sent from, or received at any place

9   within California." *Mastel*, 549 F. Supp. 3d at 1136 (emphasis added) (quoting Cal. Penal Code

10   § 631(a)).  Here, and as explained below, Plaintiff makes only conclusory allegations that merely

11   parrot the statutory elements of Section 631(a), and are inadequate to satisfy her pleading

    obligations.

12   Further, Courts in California have found that the second prong of CIPA "only imputes

13   liability when the defendant reads, or attempts to read, a communication that is '*in transit* or

14   *passing* over any wire, line, or cable, *or is being sent from, or received* at any place within'

15   California." *Mastel*, 549 F. Supp. 3d at 1136; *see also Mireskandari v. Daily Mail*, No. 12-cv-

16   02943, 2013 WL 12129559, at *10 n.44 (C.D. Cal. Jul. 30, 2013) (finding that plaintiff had

17   failed to plausibly allege a CIPA claim under the second prong because the complaint failed

18   "plausibly to plead that [defendant] intercepted any electronic communication while it was in

19   transit; at most, he alleges the illegal disclosure of data [defendant] held in storage").  It is well

20   settled in this Circuit that in order for "eavesdropping" to occur, a communication must be

21   "intercepted" while it is "in transit or passing over a wire, line or cable."  Cal. Penal Code §

22   631(a).

23

24

---

25   prong of Section 631(a) – not the first prong.  *Javier*, 2022 WL 1744107, at *1.  This
    interpretation is consistent with other courts addressing this issue.  *Mastel*, 549 F. Supp. 3d at

26   1135 ("While it is true that several federal courts interpreting the CIPA have held that the statute
    may apply to technologies beyond telephones or telegraphs, those holdings have largely been

27   limited to the statute's *second* clause, which prohibits persons from reading, or attempting to
    read, the 'contents or meaning of any message, report, or communication while the same is in

28   transit or passing over any wire, line, or cable' without consent or authorization.")

The court in *American Eagle* and *Cinmar* held that "[p]laintiff's bare allegations that 'the third party ... secretly intercept[s] (during transmission and in real time)' is conclusory and does not allege specific facts as to how or when the interception takes place, which has been found to fall short of stating a plausible claim under section 631(a)." 2023 WL 2469630, at *9; *see also Cinmar*, 2023 WL 2415592, at *9-11. Further, "[b]are allegations of recording and creating transcripts do not specifically allege that Plaintiffs' messages were intercepted while in transit" and "do not provide fair notice to Defendant of their alleged violation" because it fails to explain the timeline of the recording. *Id.*

In interpreting Section 631, "[c]ourts have generally construed [CIPA] as coextensive with the [federal] Wiretap Act." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (citing *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.")); *see also* Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523 ("Wiretap Act"). In *Konop v. Hawaiian Airlines, Inc.*, the Ninth Circuit construed the term "intercept" narrowly, holding that for a communication "to be 'intercepted' in violation of the [federal] Wiretap Act, it must be acquired during transmission, *not while it is in electronic storage.*" 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). "Even if the storage phase is transitory and lasts only a few seconds, it is still considered 'electronic storage,'" and is not an interception of a communication in transit. *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007). The Ninth Circuit in *Konop* explained that "[t]his conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" 302 F.3d at 878 (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)). The Ninth Circuit and district court caselaw "generally stands for the proposition that once an [electronic communication] has been received by the destination server, a communication becomes 'stored' *and contemporaneous interception is no longer possible.*"

*Lindsay-Stern v. Garamszegi*, No. 14-cv-01970, 2016 WL 11745948, at *4 (C.D. Ca. Oct. 13, 2016).

Courts applying Section 631(a) and the federal Wiretap Act have acknowledged that, given the speed of modern internet communications, "the Wiretap Act's application to that form of electronic communication is undoubtedly limited."[12]  *NovelPoster*, 140 F. Supp. 3d at 951 (dismissing Wiretap Act and Section 631(a) claims related to email communications); *see also Lindsay-Stern*, 2016 WL 11745948, at *4-5.  To be sure, the Ninth Circuit has confirmed that "the existing statutory framework is ill-suited to address modern forms of communication[.]" *Konop*, 302 F.3d at 874.  That is because internet communications, including email, travel so quickly that there it is nearly impossible for an interception while in transit to occur. *NovelPoster*, 140 F. Supp. 3d at 951-52.

Applying these principles, courts have not hesitated to dismiss claims involving internet communications, holding that while they may be accessed either on the originating or receiving end, they are not typically intercepted *during transmission.  Id.*; *see also, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (granting summary judgment to defendants where "[t]he undisputed facts [ ] show that Defendants did not access, disclose, or use any emails that had been acquired during transmission. Rather, the emails Defendants viewed were stored on Gmail"); *see also Glob. Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) ("a qualifying 'intercept' under the [Wiretap Act] . . . can only occur where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server").

In the *Vizio Consumer Privacy Litigation*, for example, Judge Staton granted a defendant's Rule 12(b)(6) motion to dismiss federal Wiretap Act and Section 631(a) claims where the plaintiffs similarly made only conclusory allegations of an interception in transit.  238 F. Supp. 3d at 1227-28.  There, the Court held that:

---

[12] Again, while the Ninth Circuit in *Javier* recognized that "Section 631(a) applies to Internet communications" it did not address the requirement that a communication must be intercepted "in transit" and, as noted, the Ninth Circuit explicitly reserved decision on issues not addressed by the district court. 2022 WL 1744107, at *1-2.

> Plaintiffs have not articulated with sufficient clarity when Vizio supposedly intercepted their communications. Besides their conclusory allegation that Vizio intercepted their electronic communications "during transmission" . . . While Plaintiffs need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe Vizio intercepts their communications.

*Id.*

Here, Plaintiff has not alleged when or how a third-party software vendor supposedly intercepted Plaintiff's chat communications.  Given on-point case law, including the Ninth Circuit's decision in *Konop*, it is not plausible that Keurig's alleged use of a software tool effectuated an interception of a communication while in transit (as opposed to from electronic storage).  In fact, as in *Cinmar* and *American Eagle*, Plaintiff's FAC includes no factual allegations regarding the timing of the alleged "interception" of the communication that could support that any such interception occurred while the alleged internet communication was transit. *See generally* FAC.  Plaintiff's mere recitation of the bare elements of the statute without factual allegations that, if proven, could support her claim are insufficient.  For this additional reason, Plaintiff's Section 631(a) claim should be dismissed.

### 4.    Plaintiff Otherwise Fails to State a Claim under Section 631(a)

The third and fourth prongs of Section 631(a) restrict any person from using, or attempting to use, "in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section[.]"  Cal. Penal Code § 631(a).  Because Plaintiff does not and cannot plead a claim under the first or second prongs of CIPA Section 631(a), her purported claims under the third and fourth prongs, likewise, fail as a matter of law.[13]  *See Mastel*, 549 F. Supp. 3d at 1137 ("Because the court concludes that [plaintiff] has failed to state a claim under either clause 1 or 2, his claim that [defendant] violated § 631(a)'s third clause fails as a matter of law.  Likewise,

---

[13] Plaintiff quotes the first three prongs of CIPA, and then states, "[h]ere, Defendant does all three." FAC ¶ 31. There can be no argument made that reciting the statute and saying Defendant "does" this satisfies the pleading standards of *Iqbal* and *Twombly*.

1  because [plaintiff] has failed to establish an underlying violation, [plaintiff] cannot maintain a

2  claim against [defendant] under the fourth prong because none of the alleged conduct that

3  [defendant] allegedly 'agreed to' or 'aided' violated § 631(a).") (internal citations omitted); *see*

4  *also Google Assistant*, 457 F. Supp. 3d at 827; *see also Williams*, 2022 WL 17869275, at *2.

5       Thus, Plaintiff's CIPA claim under the third and fourth prongs fail on their face, and

6  should be dismissed.

7       **B.**    **Plaintiff Fails to State a Valid Claim Under Section 632.7**

8       Plaintiff's claim under Section 632.7 also fails as a matter of law because the statute does

9  not apply to the Internet tracking activity at issue in this case. *See Cinmar*, 2023 WL 2415592, at

10  *11-12 (dismissing Plaintiff's Section 632.7 claim with prejudice). Plaintiff's attempt to conjure

11  another invented CIPA violation from a voluntary website chat fails for two independent, and

12  equally fatal, reasons: (1) Section 632.7 exclusively applies to communications between

13  telephones, which Plaintiff cannot allege here, and (2) in sending written messages necessarily

14  "recorded" by the recipient, Plaintiff consented to that "recording".  Here, as in *Cinmar*, the

15  Section 632.7 should be dismissed with prejudice.

16       **1.**    **Section 632.7 Exclusively Applies to Communications Between**
17                **Telephones, Which Plaintiff Cannot Allege Here**

18       Plaintiff's Section 632.7 claim "is foreclosed by the plain language of the statute." *See*

19  *Hot Topic*, 2023 WL 2026994, at *10. "The unambiguous meaning of the statute is [] that it only

20  applies to communications involving two telephones." *Id.*

21       Section 632.7 states:

22            [e]very person who, without the consent of all parties to a
23            communication, intercepts or receives and intentionally records, or
             assists in the interception or reception and intentional recordation
24            of, a communication transmitted between [1] two cellular radio
             telephones, [2] a cellular radio telephone and a landline telephone,
25            [3] two cordless telephones, [4] a cordless telephone and a landline
             telephone, or [5] a cordless telephone and a cellular radio telephone,
26            shall be punished by fines or imprisonment.

27

28

Cal. Pen. Code § 632.7(a). "According to this list of included types of telephones, the communication must have a cellular radio or cordless telephone on one side, and a cellular radio, cordless, or landline telephone on the other side." *Montantes v. Inventure Foods*, No. 14-cv-1128, 2014 WL 3305578, *4 (C.D. Cal. July 2, 2014). In other words, Section 632.7 does not apply unless a specified "telephone" appears on each side of the communication. Therefore, Section 632.7 applies only to "a narrow set of communication over telephone technology." *Cinmar*, 2023 WL 2415592, at *13.

In *Cinmar*, Judge Fitzgerald analyzed the plain text of the statute, the legislative history, and amendment history in holding that Section 632.7 unambiguously does not extend protection to communications over the internet and only applies to the five types of calls enumerated in the text. *Cinmar*, 2023 WL 2415592, at *11-13; *see also Hot Topic*, 2023 WL 2026994, at *11. The legislative history "establish[es] that [S]ection 632.7 responded to concerns that existing law did not prohibit the recordation of communications involving a cellular or cordless telephone," in spite of the fact that it was "illegal to intercept or record a conversation between traditional telephones." *Smith v. LoanMe, Inc*., 11 Cal.5th 183, 196 (2021).[14] Here, the Legislature has not amended Section 632.7 to expand its application beyond communications between telephones.[15]

Judge Fitzgerald additionally found that use of computer functions on a smart phone, such as accessing a website and using the chat feature, "falls outside of the scope of section

---

[14] The Legislature has regularly amended or added CIPA provisions since internet and website usage became wide-spread, including provisions expressly addressing and defining "electronic communications" in 2015 and 2022, *see* Cal. Pen. Code §§ 638.50-52, and more importantly, adding Section 632.01 in 2016 to prohibit the disclosure of confidential communications with health care providers "in any forum, including…Internet Web sites and social media," defined as "an electronic service or account, or electronic content, including, but not limited to… instant and text messages, email, online services or accounts, or Internet Web site profiles or locations." *Id*. § 632.01.

[15] Tellingly, in June 2022 the Legislature enacted an amendment to Section 632.7 itself, which will took effect on January 1, 2023. 2022 Cal. Legis. Serv. Ch. 27 (S.B. 1272). But the Legislature did not add website or internet communications to its scope: rather, the Legislature proposed to "exempt from these provisions any telephone company engaged in the business of providing communications services and facilities, as specified." *Id*. It is a settled statutory construction principle that "failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes made in other respects, is indicative of an intention to leave the law unchanged in that respect." *People v. Black*, 32 Cal.3d 1, 9 (1982).

632.7." *Cinmar*, 2023 WL 2415592, at *11-13 ("Even assuming Plaintiffs used a smart phone in their conversation with Defendant, the Court agrees with the reasoning in *Mastel v. MiniClip* that 'although iPhones contain the word 'phone' in their name,' Plaintiff was using 'a feature of the portion of the iPhone that functions as a computer, not the phone.'") (quoting 549 F. Supp. 3d at 1135). Similarly, in *Hot Topic*, Judge Bernal held that "Plaintiff's allegations all relate to text-based web communications regarding a chat feature on a website, which virtually by definition cannot involve two telephones." 2023 WL 2026994, at *10.

Plaintiff and this Court cannot change the scope of the statute to encompass communications the Legislature could have, but did not, include.[16]

### 2.     Plaintiff's Section 632.7 Must Be Dismissed Because He Does Not Allege that the Chat Was Between Two Telephones

As shown above, to state a claim under Section 632.7, Plaintiff must allege there was a "cellular radio or cordless telephone on one side" of the chat, "and a cellular radio, cordless, or landline telephone on the other side." *Montantes*, 2014 WL 3305578, at *4. Plaintiff does not, because she cannot, do so.

Instead, Plaintiff offers the vague allegation that she "visited Defendant's website using a smart phone[,]" FAC ¶ 4, and that she "communicated with Defendant using telephony subject to the mandates and prohibitions of Section 632.7." FAC ¶ 40.  Plaintiff's lone allegations regarding Defendant is even more vague and false: "By definition, Defendant's chat communications from its website are transmitted to website visitors by either cellular telephony or landline telephony." FAC ¶ 22 (emphasis added); *see also id.* ¶¶ 40-43. Plaintiff's repeated use of the term "telephony" appears designed to obfuscate the absence of telephone

---

[16] In her FAC, Plaintiff cites to the *Goodyear Tire* decision for the proposition that the above-described allegations state viable claims for violations of section 632.7 of CIPA. However, as stated above, the court in *Hot Topic* respectfully disagreed with the *Goodyear Tire* opinion's persuasiveness as authority and declined to follow it. 2023 WL 2026994, at *11. The court found that "*Goodyear[ Tire]*'s reasoning rests on the false premise that [Defendant] was using a telephone at all: the allegations there, as here, make it abundantly clear that it was not using a telephone, for Goodyear, like Hot Topic[ and Keurig], was accused of "embed[ing] code into its chat feature that allows Goodyear to record and transcribe" text-based communications. *Id.* Plaintiff does not address the more recent *Hot Topic* or *Cinmar* opinions which hold the contrary.

communications here, implying there was some nebulous use of telephone lines in the transmission of the chat messages to and from the website. FAC ¶¶ 22, 40-43  But unlike other CIPA provisions, Section 632.7 does not mention telephone "wire" or "line" or "cable" or even "telephony"—it only applies to "telephones." *See* Cal. Pen. Code §632.7(a).

Here, just because Plaintiff may have used the web browser on a "smartphone" to access Defendant's website does not mean there was a telephone communication. As discussed above, the *Mastel* and *Cinmar* courts rejected similar attempts to characterize an iPhone app as a "telephone instrument" because "[a]lthough iPhones contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers… that perform functions well beyond and unrelated to those of a telephone"—such as accessing the internet. *Mastel*, 549 F.Supp.3d at 1135; *Cinmar*, 2023 WL 2415592, at *12.  Because "Plaintiffs' allegation that [she] used a smart phone [] does not meet [the] standard" and Plaintiff "fail[s] to plausibly allege that Defendant used any type of telephone technology at all[,]" Plaintiff's claim should be dismissed. *Cinmar*, 2023, WL 2415592 at *12-13

### 3.  In Sending Written Messages Necessarily "Recorded" By The Recipient, Plaintiffs Consented To That "Recording"

Even if Plaintiff could plausibly allege her website communication was between two telephones, and she cannot, Plaintiff's Section 632.7 claim still fails. Courts recognize that because text communications are necessarily "recorded" by the recipient, the sender consents. Here, Plaintiff cannot allege that she was unaware her messages were being "recorded."

"Consent is an express element of a claim under [S]ection 632.7." *Moledina v. Marriott Int'l, Inc.,* No. 22-cv-03059, 2022 WL 16630276, *7 (C.D. Cal. Oct. 17, 2022). "A party's awareness" she is being recorded can show she "impliedly consented to the recording." *Id.* (dismissing Section 632.7 claim where allegations and transcript showed implied consent). Thus, courts must consider the "surrounding circumstances indicating that the party to the call knowingly agreed to the surveillance." *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.,* No. 12-cv-01685, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016). "The

critical question is whether the party… had adequate notice of" the recording, such as when a party "continues to use the communication system after receiving notice the communications are being" recorded. *Id.*

California courts unanimously recognize "a telephone conversation ceases to exist when the conversation ends, unless the conversation is recorded; however, internet communications, such as e-mails and instant messages, are sent via a recorded format, i.e., writing." *People v. Nakai*, 183 Cal. App. 4th 499, 515 (2010). And Plaintiff "cannot have a reasonable expectation that her online communications will not be recorded" under California law, because "internet chats" are "by their very nature recorded on the computer of at least the recipient, who may then easily transmit the communication to anyone else who has access to the internet." *In re Google Inc.*, No. 13–md–02430, 2013 WL 5423918, at *22-23 (N.D. Cal. Sept. 26, 2013) (collecting cases). In the Section 632.7 context, the California Supreme Court similarly observed that *written* communications "lead to a reasonable inference that a party sending [the message] *has consented to having it recorded by the intended recipient" because "recordation would be expected* with a facsimile or text transmission, for example." *Smith*, 11 Cal.5th at 194 n.4.

Here, Plaintiff alleges "Defendant did not obtain Plaintiff's or the Class members' express or implied consent for the preceding intrusions, nor did Plaintiff or Class members know at the time of the conversations of Defendant's conduct." FAC ¶ 24; *see also* ¶¶ 13, 35, 42. But this allegation is false because Plaintiff *also* alleges she "visited Defendant's website" and "conducted a brief conversation with an agent of Defendant through the website chat feature." *Id.* ¶ 4. That is, Plaintiff concedes she initiated a chat by typing in a message that was "necessarily recorded on receipt" by Defendant, and thus "certainly consented to that recording." *Montantes*, 2014 WL 3305578, at *3. Accordingly, Plaintiff's Section 632.7 claim fails.

### C.   Keurig's Privacy Policies Captured Consent to the Complained-Of Practice

Finally, even if Plaintiff had otherwise stated a valid CIPA claim (which she has not), Sections 631(a) and 632.7 of CIPA prohibit certain activities only where no consent has been given.  Cal. Pen. Code § 631(a) (imposing liability only where certain conduct occurs "without

the consent of all parties to the communication"). As discussed above, lack of consent is also an express element of Section 632.7. "Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint[,]" and may be challenged on a motion to dismiss. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (dismissing CIPA § 637.6 claim). While Plaintiff alleges in her FAC that she did not consent, FAC ¶¶ 10, 13, 24, 35, "the Court need not accept as true any allegations contradicted by matters properly subject to judicial notice or by exhibit or that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Garcia*, 78 F. Supp. 3d at 1136 (internal quotations removed).

Here, Keurig's Privacy Policy was conspicuously hyperlinked on the bottom of website—an undisputable and public fact that is subject to judicial notice and is incorporated by reference in the FAC. *See* FAC ¶ 19; *see also* RJN at Ex. 1. Through the website's Privacy Policy, Plaintiff was on notice that the website used third-party service providers and technologies; the Privacy Policy states that Keurig "use[s] service providers to help us operate and improve the Services, such as for data hosting and maintenance, analytics, customer care, marketing, payment processing, order fulfillment, and security operations." RJN at Exs. 2, 3; *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1030 (N.D. Cal. 2014) (granting Yahoo's motion to dismiss claim under Wiretap Act because email users agreed to terms of use and privacy policy); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018) (dismissing invasion of privacy claim finding plaintiff did not have a reasonable expectation of privacy because he consented to the sharing of his geolocation data with perfect strangers).

Plaintiff concedes that this disclosure is adequate where she alleges that:

> At some point affter (*sic*) receiving Plaintiff's pre-filing correspondence, Defendant quietly admitted to the sum and substance of the entire scheme. Specifically, Defendant updated its online privacy policy to admit that it does exactly what Plaintiff alleges herein. *See* https://www.keurig.com/content/privacy-policy ("*We collect Personal Information from a variety of sources, including from personal information you provide [using the website chat feature] . . . and share information with third parties that send you targeted advertisements.*")

FAC ¶ 19 (emphasis removed). Plaintiff ignores that the Privacy Policies **in place during Plaintiff's visit** disclosed the same information and already mentions targeted advertising throughout each.  *See* Part II.C.

Further, Plaintiff cannot rely upon the Ninth Circuit's decision in *Javier* to avoid dismissal based upon her own provision of consent.  In *Javier*, the Ninth Circuit's holding was narrow – that a party cannot *retroactively* consent under CIPA.[17]  2022 WL 1744107, at *2. Here, by visiting Keurig's website, Plaintiff was necessarily confronted with a conspicuously linked Privacy Policy, thereby providing prior consent (assuming *arguendo* that CIPA even applies, which it does not).

Finally, in her prior complaint, Plaintiff proclaimed herself a "consumer privacy advocate;" therefore, it is implausible for Plaintiff to contend that she was not aware of privacy policies generally or on notice of Keurig's Privacy Policies.  Compl. ¶ 16.  Thus, dismissal of the CIPA claim because of Plaintiff's acceptance of the Privacy Policies is also appropriate.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Keurig respectfully requests that this Court dismiss Plaintiff's First FAC in its entirety.  Further, because Plaintiff cannot amend her FAC to assert viable causes of actions (given her own allegations to date, the documents referenced in her FAC, and judicially noticeable documents), and because Plaintiff was unable to remedy these issues despite having the opportunity to amend her Complaint, the dismissal should be with prejudice.


DATED: March 30, 2023

By:   */s/ Lauri A. Mazzuchetti*
Lauri Mazzuchetti (*pro hac vice*)
lmazzuchetti@kelleydrye.com
KELLEY DRYE & WARREN
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900

---

[17] The Court in *Hot Topic* acknowledged the narrow ruling of *Javier*: "The Ninth Circuit's unpublished decision in [*Javier*] appears to have opened the floodgates for these cases, an unfortunate unintended consequence of *a brief, narrow ruling limited to the issue of prior consent*."  2023 WL 2026994, at *4 n.6 (emphasis added).

Facsimile: (973) 503-5950

Becca J. Wahlquist (SBN 215948)
bwahlquist@kelleydrye.com
Victor Sandoval (SBN 344461)
vsandoval@kelleydrye.com
KELLEY DRYE & WARREN
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901

*Attorneys for Defendant*
*Keurig Green Mountain, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 30, 2023, I electronically filed the foregoing **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST FAC; MEMORANDUM IN SUPPORT** with the United States District Court for the Northern District of California by using the CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.

DATED: March 30, 2023                     Respectfully submitted.

                                    By:   */s/ Lauri A. Mazzuchetti*
                                          Lauri A. Mazzuchetti