UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONYA VALENZUELA,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant. | Case No. 22-cv-09042-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

Plaintiff brings this putative class action against Defendant for violations of the California Invasion of Privacy Act ("CIPA") §§ 631, 632.7.  Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6).  After carefully reviewing the papers submitted and having had the benefit of oral argument on May 19, 2023, the Court GRANTS Defendant's motion to dismiss because Plaintiff fails to state a claim under either provision.

**COMPLAINT ALLEGATIONS**

While in California, Plaintiff "visited Defendant's website using a smart phone and conducted a brief conversation with an agent of Defendant through the website chat feature." (Dkt. No. 17 ¶ 4.)[1]  Plaintiff "was not advised that the chat was monitored, intercepted, or recorded," and states she did not consent to Defendant's actions.  (*Id.* ¶¶ 4, 35)

Defendant's website uses a "third party to covertly embed code into Defendant's chat feature."  (*Id.* ¶ 13.)  According to Plaintiff, the third-party is either "WebEx, SalesForce Audience Studio, or FullStory."  (*Id.*)  The code embedded in the chat feature "allows the [third-party] to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting visitors."  (*Id.*) Thus, Plaintiff alleges, "Defendant intentionally caused the internet communication between Plaintiff and Class Members with

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Defendant's Website to be recorded. Defendant also aided, abetted at least one third party to eavesdrop upon such conversations during transmission and in real time." (*Id.* ¶ 31.)

Plaintiff alleges the third-party's chat software is "integrated" with "Meta subsidiaries like Facebook and WhatsApp." (*Id.* ¶ 15.) Plaintiff cites a news article stating Meta bought a company called "Kustomer" that can manage customer messages from multiple sources on a centralized platform to support this allegation. (*Id.*) Meta then sells advertisements based on the information gleaned in the chats on Defendant's website. (*Id.* ¶¶ 16-17.)

After Plaintiff sent pre-litigation correspondence to Defendant, Defendant updated its privacy policy to state: "We collect Personal Information from a variety of sources, including from personal information you provide [using the website chat feature] . . . and share information with third parties that send you targeted advertisements." (*Id.* ¶ 19.)[2]

## DISCUSSION

Plaintiff brings claims under California Penal Code §§ 631 and 632.7.

**I.   Section 631**

Section 631 creates four avenues for relief:

(1) where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument";

(2) where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state";

(3) where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and

(4) where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

---

[2] Plaintiff links to https://www.keurig.com/content/privacy-policy in the FAC. The current version of that document, (Effective Date May 8, 2023; Last Accessed May 24, 2023), does not contain the language Plaintiff quotes in the FAC.

1  Cal. Penal Code § 631(a). Plaintiff argues Defendant is vicariously liable under the fourth clause
2  for aiding and abetting the third-party's violations under 631(a)'s first, second, and third clauses.[3]
3  The Court addresses each liability theory in turn.

### A. Plaintiff fails to state a claim that the third-party violated 631(a)'s first clause.

Under California law, statutory interpretation "begins with the words themselves . . . because the words generally provide the most reliable indicator of [legislative] intent." *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020). As discussed above, Section 631(a)'s first clause prohibits "any person who by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any *telegraph* or *telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal *telephonic* communication system[.]" (emphasis added). Thus, by its plain terms, the statute prohibits unauthorized connection with transmissions related to "telegraph or telephone" technologies. *Id.*

Plaintiff makes no allegation the third-party makes a connection with such technologies here. Rather, Plaintiff alleges only that she used a smart phone's internet capabilities to contact Defendant. Thus, Plaintiff fails to state a claim under clause one because Section 631(a)'s plain text does not prohibit the non-telephonic conduct described here. *See In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) (finding clause two does apply to internet communications because, *unlike clause one*, clause two contains no limitation to telegraphic and telephone wires and the Legislature intended the two clauses to apply to different technologies); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (same).

Plaintiff's contrary arguments are unpersuasive. Plaintiff first argues this clause applies to "cellular phone communications" because "***cellular phone communications* are *wire***

---

[3] While Plaintiff alleges Defendant directly violates clauses one, two, and three, (Dkt. No. 17 ¶ 31), Plaintiff does not address her direct liability theory in her opposition, (*See* Dkt. No. 27). Nor would any such argument be persuasive. Plaintiff intended to communicate with Defendant. (Dkt. No. 17 ¶ 4.) CIPA protects speakers from "eavesdropping" by "third parties." *Ribas v. Clark*, 38 Cal. 3d 355, 359 (Cal. 1985). Thus, to the extent Plaintiff alleges Defendant directly violated Section 631(a)'s first, second, or third clause, that argument fails to state a claim.

United States District Court
Northern District of California

1  *communications*" under the Federal Wiretap Act and CIPA is interpreted co-extensively with that
2  law. (Dkt. No. 27 at 22-24 (emphasis in original) (citing *In the Matter of the Application of the*
3  *United States for an Order Authorizing the Roving Interception of Oral Communications*, 349
4  F.3d 1132, 1139 (9th Cir. 2003).) Sure. But, as discussed above, Plaintiff accessed Defendant's
5  website using the smartphone's *internet* capabilities, not the smartphone's *telephonic* capabilities.
6  Thus, Plaintiff's argument fails because the statute—by its plain terms—does not apply to
7  technologies other than telegraphs and telephones. *See Williams v. What If Holdings, LLC*, No. C
8  22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (collecting cases finding
9  the first clause "does not apply to the context of the internet.")

10  Plaintiff also argues CIPA should be interpreted as applying to new technologies. (Dkt.
11  No. 27 at 25-26.) Plaintiff cites the California Supreme Court in *Apple Inc. v. Superior Court* for
12  the proposition that "[i]n construing statutes that predate their possible applicability to new
13  technology, courts have not relied on wooden construction of their terms." (*Id.* citing *Apple Inc. v.*
14  *Superior Ct.*, 56 Cal. 4th 128, 137 (2013).) The problem with this argument is that CIPA has been
15  amended numerous times—including as recently as 2011 and 2022—and the Legislature has not
16  updated clause one to include internet technologies. *See* Cal. Penal Code. § 631. Thus, this
17  statute does not "predate" internet technology. *See Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL
18  2469630, at *6 (C.D. Cal. Mar. 7, 2023) (collecting cases rejecting this argument).

19  Plaintiff argues "when faced with two possible interpretations of CIPA, the California
20  Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest
21  privacy protection." (Dkt. No. 27 at 26 (quoting *Matera*, 2016 WL 8200619, at *19.) Plaintiff's
22  reliance on *Matera* is misplaced. While *Matera* held the *second clause* applied to the internet, the
23  court reasoned the *first clause*—by its plain text—*did not* apply to the internet. *Matera*, 2016 WL
24  8200619, at *19. As noted in *Matera*, the California Supreme Court reads statutes to apply to new
25  technologies "where such a reading would not conflict with the statutory scheme." *Id.* at *20.
26  Here, Plaintiff's desired interpretation (internet technology as a telephone or telegraph wire)
27  directly conflicts with the statutory scheme. *Id.* In sum, Plaintiff fails to plead the third-party
28  violated Section 631(a)'s first clause because Plaintiff's theory contradicts the statute's plain text.

4

### B. Clause Two

Clause Two applies if the third-party "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]" Cal. Penal Code § 631(a). This statute has three requirements relevant here: (1) the absence of consent; (2) the party exception; and (3) the "while . . . in transit" requirement.

#### 1. Consent

Plaintiff meets her burden to plead lack of consent here. The statute prohibits eavesdropping "without consent of all parties to the communication." *Id.* Plaintiff alleges she "was not informed" her conversations were being "recorded, intercepted, or eavesdropped upon," and did not consent to monitoring by the third-party when she communicated with Defendant. (Dkt. No. 17 ¶¶ 4, 24.) That is sufficient at this stage. *See Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (finding absence of "express prior consent" when complaint pled "neither Assurance nor ActiveProspect asked for Javier's consent prior to his filling out the insurance questionnaire.")

Defendant's contrary argument is unpersuasive. Defendant asks the Court to take judicial notice of Defendant's website, the website's hyperlink to its privacy policy, and the privacy policies' contents. But, even if the Court takes judicial notice of those webpages, Defendant cites no case in which merely hyperlinking to a privacy policy at the bottom of a webpage is sufficient to establish consent under CIPA. Rather, each of Defendant's cited cases concerns situations in which the plaintiff consented under CIPA by *expressly agreeing* to a privacy policy. *See Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (consenting to privacy agreement occurred via plaintiff's click on signup link); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1030 (N.D. Cal. 2014) (finding consent when plaintiffs clicked an account creation link directly next to the phrase "I agree to the Yahoo Terms and Privacy"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018) (finding consent when Plaintiff affirmatively pled he consented).

5

### 2. The Party Exception

Section 631 contains an exemption from liability for a person who was a "party" to a communication. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 160 Cal. Rptr. 471, 475 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."). "The party exception must be considered in the technical context of this case." *Id.*

Two California cases guide this analysis. As Judge Breyer recently explained:

> In *Rogers v. Ulrich*, Ulrich used a tape recorder jack installed in his telephone to record a conversation he had with Rogers, and then played the conversation for a third party. [52 Cal. App. 3d 894, 899, (1975).]. Relying on the legislative finding that the law is intended to prevent "eavesdropping," the appellate court held that a party to a conversation cannot "eavesdrop" under the law: "It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Id.* at 899[.]
>
> In *Ribas v. Clark*, which arose out of a feud over a divorce settlement, the wife asked her friend, Clark, to listen in (via an extension) to a conversation with her former husband, Ribas, about a prior conversation Ribas had had with the wife's attorney. [38 Cal. 3d 355, 361–62 (1985)]. The California Supreme Court held that such an act is eavesdropping under the statute, because the statute differentiates between "the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor." *Id.* at 360–61. "[S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Id.* at 361.

*Javier v. Assurance IQ, LLC*, No. 20-CV-02860-CRB, 2023 WL 114225, at *4 (N.D. Cal. Jan. 5, 2023) (cleaned up). Thus, the question is whether the unnamed "third-party" here is a third-party eavesdropper (like Clark in *Ribas*) or a tape-recorder in Defendant's control (as in *Rogers*). Put another way, the question is whether the third party has "the <u>capability</u> to use its record of the interaction for [another] purpose. *Javier,* 2023 WL 114225, at *6 (emphasis in original). An eavesdropper has that capability. A tape-recorder (absent an operator) does not.

Plaintiff fails to state facts supporting the unnamed third party's "<u>capability</u> to use its record of the interaction for [another] purpose." *Id*. (emphasis in original). Plaintiff does not

6

identify the third-party at issue in this case. Rather, Plaintiff only proposes a few possible software providers that Defendant might be using. Then, without identifying the third party, Plaintiff alleges the third party is integrated with Meta and has the capability to sell customer data to Meta. (Dkt. No. 17 ¶ 15.) This inferential leap is unsupported and therefore not plausible. First, Plaintiff alleges no facts to plausibly support an inference that Defendant uses any of those three providers. And, second, even if she had, she does not allege any facts to plausibly support an inference that any of the potential providers share data with Meta. Instead, Plaintiff alleges only that Meta is integrated with a *different* chat provider—Kustomer. That is insufficient because Plaintiff does not allege Defendant uses Kustomer on its website. Thus, absent allegations establishing an eavesdropper existed here, Plaintiff fails to state a claim under § 631(a)'s second clause.

### 3. Interception

Defendant also moves to dismiss on grounds Plaintiff fails to satisfy the timing requirement under Section 631(a)'s second clause. To be liable, the eavesdropper must listen to a communication "*while* the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a) (emphasis added).

"While" is the key word here. Plaintiff alleges Defendant's code "allows the [third party] to secretly intercept in real time, eavesdrop upon and store transcripts of Defendant's chat communications[.]" (Dkt. No. 17 ¶ 13.) But how? That statement does little more than restate the pleading requirement of real time interception. Plaintiff's obligation to provide the grounds of her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level. *Id.* But this complaint is entirely speculative. How do these third parties interface with Defendant's chat platform other than via "code"? It is impossible to infer from the complaint. Thus, Plaintiff's simultaneity claims are just too conclusory to survive *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Such a pleading standard is not unreasonable. Plaintiff provides a great deal of

1    information about how *Meta* uses the data the third party obtains. (Dkt. No. 17 ¶ 16.) But the

2    complaint provides no detail as to how the interception occurs. (*Id.* ¶ 13.) At oral argument,

3    Plaintiff confirmed an expert could look at Defendant's webpage and identify whether such third-

4    party interception occurs. But Plaintiff's allegations here do not approach that level of specificity.

5    The allegations here do not explain— even at a high level—how such code might plausibly work.

6         Plaintiff urges the Court to rely on *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 848

7    (N.D. Cal. 2014) for the proposition that the "complaint's allegations that users' messages were

8    intercepted in transit is to be taken as true at this stage of the case." But *Campbell* merely

9    exemplifies how Plaintiff could have met her burden. As a recent case explained:

> [T]he *Campbell* plaintiffs alleged far more details about the purported interception than Plaintiffs do here. Campbell, 77 F.Supp.3d at 839 ("[plaintiffs] allege that Facebook scans the content of their private messages, and if there is a link to a web page contained in that message, Facebook treats it as a "like" of the page, and increases the page's "like" counter by one"). This allegation contains sufficient detail to support an inference of in transit interception, whereas Plaintiffs' allegations that "the third party . . . secretly intercept[s] in real time, eavesdrop[s] upon, and store[s] transcripts" is conclusory and does not allege specific facts as to how or when the interception takes place, which has been found to fall short of stating a plausible claim under section 631(a).

17   *Licea v. Cinmar, LLC*, No. CV 22-6454-MWF (JEM), 2023 WL 2415592, at *9 (C.D. Cal. Mar. 7,

18   2023). The allegations here are identical to those rejected in *Licea v. Cinmar*. And, as in *Cinmar*,

19   the Court is persuaded *Campbell* is inapposite to the allegations here.

20        Plaintiff's alternative argument claims "The Second Clause Applies to Intercepted

21   Communications Sent From or Received at Any Place Within California." (Dkt. No. 27 at 20-21.)

22   Not so. Again, "while" is the critical word. The statute applies to messages intercepted "*while* the

23   same…is being sent from, or received at any place within this state." "While" implies the

24   interception must occur contemporaneous with the sending or receipt of the message. Thus,

25   Plaintiff cannot avoid the simultaneity argument merely because she sends or receives a message

26   in California. The FAC fails to state a claim under § 631(a)'s second clause.

27                                \* \* \*

28        In sum, Plaintiff fails to state a claim under the first and second clauses of § 631(a). Thus,

1  Plaintiff fails to state a claim under the fourth clause.[4]

2  **II.     Section 632.7**

3  Plaintiff also allege that Defendant recorded Plaintiff's written communication in violation

4  of California Penal Code § 632.7. (FAC ¶¶ 39-44).

5  Again, we begin with "the words themselves" when interpreting California statutes.

6  *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020).  Under § 632.7,

> [e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records . . . a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be [guilty of a crime.]

Cal. Penal Code § 632.7(a).  None of those permutations apply here because Plaintiff fails to allege how Defendant receives the messages sent via its chat feature.  No plausible allegation exists here that Defendant received Plaintiff's message on a "cellular radio telephone," a "landline telephone," or a "cordless telephone[.]" *See id.* (defining each type of phone).

Plaintiff again invites the Court to engage in statutory re-writing to update § 632.7 for the internet era by interpreting "landline" broadly.  But that is not this Court's role.  The statute has clear terms.  These allegations do not fall within them.  Plaintiff argues the statute contemplates internet communications because it defines communications as including "voice, data, or image[s], including facsimile." Cal. Penal Code § 632.7(d)(3).  That provision defines *communications*.  It does not modify the devices regulated under § 632.7.  As described above, § 632.7 unambiguously limits its reach to communications *between* various types of telephones.  Plaintiff makes no persuasive argument the statute contemplates internet communications between a smart phone and an unspecified device on Defendant's end.[5]  Thus, Plaintiff's claim under this statute is dismissed.

---

[4] Defendant moved to dismiss Plaintiff's claims predicated on the third-party's violation of Section 631(a)'s third clause.  Plaintiff did not oppose that motion. Thus, that claim is dismissed.

[5] Another district court reached the opposite conclusion in *Byars v. Goodyear Tire & Rubber Co.*, 2023 WL 1788553, at *5 (C.D. Cal. Feb. 3, 2023).  The Court finds that case unpersuasive for the reasons stated in *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *11-12 (C.D. Cal. Feb. 14, 2023).

**CONCLUSION**

For the reasons stated above, Plaintiff's FAC is dismissed without prejudice. Plaintiff may amend once more on or before June 7, 2023.

**IT IS SO ORDERED.**

This Order disposes of Dkt. No. 25.

Dated: May 24, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge