1  **PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
3  4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
4  Telephone: (949) 706-6464
Facsimile:  (949) 706-6469
5
Attorneys for Plaintiff
6

7

8              **UNITED STATE DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11  SONYA VALENZUELA, individually and on          Case No. 3:22-cv-09042-JSC
    behalf of all others similarly situated,
12                                                 **MEMORANDUM OF POINTS AND**
                          Plaintiff,               **AUTHORITIES IN SUPPORT OF**
13          v.                                     **PLAINTIFF'S RESPONSE TO ORDER TO**
                                                   **SHOW CAUSE RE: STANDING**
14  KEURIG GREEN MOUNTAIN, INC., a
    Delaware corporation d/b/a KEURIG.COM; and     Date:        September 26, 2023
15  DOES 1 through 25, inclusive,                  Time:        10:00 a.m.
                                                   Courtroom:   8
16                        Defendants.              Judge:    Hon. Jacqueline Scott Corley

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      ARGUMENT

**A.      Article III Standing to Sue Exists.**

**1.      The FAC Has Sufficiently Alleged an Injury In Fact to Plaintiff's Privacy Interest, Which Harms Her Dignity.**

The Ninth Circuit has "adopted a two-step approach to determine whether the violation of a statute causes a concrete injury." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019). Such inquiry asks "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.* at 1270-71 (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)).

**a.      CIPA Was Established to Protect Plaintiff's Substantive Privacy Interest.**

The Ninth Circuit has held that claims under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq.*, protect concrete, substantive privacy interests, which is sufficient to confer standing. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1116-19 (9th Cir. 2020); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *2-*4 (S.D. Cal. July 13, 2023) (Sabraw, C.J.); *Stasi v. Inmediata Health Group Corp.*, 501 F. Supp. 3d 898, 909 (S.D. Cal. 2020) ("the Ninth Circuit has found, in near uniformity, that intangible injuries based on alleged violations of privacy-related statutes are sufficiently concrete"); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) ("Being eavesdropped upon is a concrete (though intangible) harm, as is having one's computer files surreptitiously scanned."); *Osgood v. Main Streat Marketing, LLC*, 2017 WL 131829, at *7-*8 (S.D. Cal. Jan. 13, 2017) (Curiel, J.); *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1087-89 (S.D. Cal. 2016) (Miller, J.); *Matera v. Google Inc.*, 2016 WL 8200619, at *14 (N.D. Cal. Aug. 12, 2016) (Koh, J.); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *7-*8 (S.D. Cal. June 29, 2016) (Curiel, J.).

"[A]llegations of violations of Plaintiffs' statutory rights under CIPA, without more, constitute injury in fact because instead of a bare technical violation of a statute, as was the case under the FCRA

- 1 -

1    considered in *Spokeo*[*, Inc. v. Robins*, 578 U.S. 330 (2016)], a CIPA violation 'involves much greater

2    concrete and particularized harm ... a violation of privacy rights', and therefore, a violation of CIPA is

3    a 'violation of a procedural right granted by statute ... sufficient ... to constitute injury in fact.'" *Osgood*,

4    2017 WL 131829, at \*7; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598 (holding that

5    CIPA codifies "a substantive right to privacy, the violation of which gives rise to a concrete injury

6    sufficient to confer standing") (citing *Campbell*).  In the instant action, a **substantive** violation of CIPA

7    allegedly occurred, not a "bare procedural violation" "divorced from any concrete harm." *Spokeo*, 578

8    U.S. at 341.

9         Although some federal courts have construed *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190

10   (2021), as potentially narrowing the scope of Article III standing, *TransUnion LLC* did nothing to alter

11   *Spokeo*, the latter of which clearly recognized intangible injuries as actionable as "concrete" injury.

12   *Spokeo*, 578 U.S. at 340.  So does *TransUnion*.  141 S. Ct. at 2204 (recognizing that "disclosure of

13   private information" is concrete intangible harm).  The main gist of *TransUnion*'s holding is that

14   "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts

15   of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under

16   Article III . . . ." *TransUnion*, 141 S. Ct. at 2205.  "*TransUnion* did not expand this principle, but rather

17   explained and reaffirmed *Spokeo*." *Beard v. John Hiester Chevrolet, LLC*, - F. Supp. 3d -, 2022 WL

18   16840332, at \*4 (E.D.N.C. Nov. 9, 2022), *appeal docketed*, No. 22-2162 (4th Cir. Nov. 14, 2022); *Batts

19   v. Gannett Co.*, 2023 WL 3143695, at \*3 (E.D. Mich. Mar. 30, 2023) ("*TransUnion* merely reiterates

20   the canons of *Spokeo*[.]"); *Barclift v. Keystone Credit Servs., LLC*, 585 F. Supp. 3d 748, 754 (E.D. Pa.

21   2022) ("The holding in *TransUnion* is not new.").  Indeed, the federal district court in *Build.com, Inc.*

22   recently held that "*TransUnion* does not undermine the reasoning in those cases," *id.*, *i.e.*, *Osgood*,

23   *Romero*, and *Matera*.  *Build.com*, 2023 WL 4535531, at \*3.

24              **b.      The Alleged CIPA Violations Alleged in This Case Actually Harm or**

25                      **Present a Material Risk of Harm to Plaintiff's Privacy Interest and Dignity.**

26        The violation of section 631(a) of the California Penal Code alleged in the SAC, if proven,

27   actually harms or presents a material risk of harm to Plaintiff's privacy interest and dignity.  Plaintiff's

28   dignitary interest is intended to be protected by the CIPA statute at issue here.  *Friddle v. Epstein*, 16

- 2 -

1 Cal. App. 4th 1649, 1660-61 (1993) ("*Any invasion of privacy involves an affront to human dignity*")

2 (emphasis added).

3    Although some federal court decisions may imply that section 631(a) imposes a confidential

4 information requirement, that interpretation is inaccurate. Section 631 of the California Penal Code does

5 not impose any confidentiality requirement. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3

6 n.3 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) (citing *People v. Guzman*, 11 Cal. App. 5th 184, 192 n.7

7 (2017)). As held by the California Supreme Court decision in *Ribas v. Clark*, 38 Cal.3d 355 (1985), the

8 fundamental harm that Plaintiff and all other similarly situated individuals experienced is having an

9 "unannounced second auditor" intercept her chat communication. *Ribas*, 38 Cal.3d at 360-61. Thus,

10 whether or not Plaintiff communicated confidential information such as her social security number, date

11 of birth, or similar types of sensitive information about Plaintiff is irrelevant to section 631(a). What

12 does matter to such claim is having an "unannounced second auditor" intercept Plaintiff's chat

13 communication without her consent. That is highly offensive and, thus, conduct that the Legislature

14 made actionable under California law.

15    "To say that a 'mere' privacy invasion is not capable of inflicting an 'actual injury' serious

16 enough to warrant the attention of the federal courts is to disregard the importance of privacy in our

17 society, not to mention the historic role of the federal judiciary in protecting it." *In re Facebook, Inc.,*

18 *Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019) (Chhabria, J.).

19    As explained by the Ninth Circuit:

20    "'[V]iolations of the right to privacy have long been actionable at common law.' *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d

21    979, 983 (9th Cir. 2017)). A right to privacy 'encompass[es] the individual's control of information concerning his or her person.' *Eichenberger*, 876 F.3d at 983 (quoting *U.S. Dep't of*

22    *Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989))."

23

24 *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598; *Greenley v. Kochava, Inc.*, 2023 WL

25 4833466, at *3 (S.D. Cal. July 27, 2023) (citing *In re Facebook*); *id.* ("Violations of this [right to

26 privacy] fall into the category of traditionally recognized harms.") (citing *Patel*, 932 F.3d at 1272)

27 (recognizing the "common law roots of the right to privacy"). "[I]ntrusions into privacy can constitute

28 an injury in fact." *Greenley*, 2023 WL 4833466, at *3.

1

### c. *Byars v. Sterling Jewelers, Inc.* Is Unpersuasive.

2
Although the Court has cited *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr.

3
5, 2023) (Blumenfeld, J.) ("*Sterling Jewelers I*"), in its OSC, any such reliance would be misplaced.

4
That decision found that an individual lacked Article III standing to sue based upon both a facial and

5
factual challenge to the plaintiff's constitutional standing to sue for violations of Penal Code §§ 631(a)

6
and 632.7. *Id.* at *2-*4.

7
In support of its facial challenge analysis, *Sterling Jewelers I* stated in relevant part, "Here, in

8
contrast, Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less

9
identify any specific personal information she disclosed that implicates a protectable privacy interest.

10
She therefore has not identified any harm to her privacy."  *Id.* at *3.  In making such conclusion,

11
however, the court ignored the fact that the plaintiff therein had argued in opposing the defendant's

12
motion to dismiss predicated in part upon lack of Article III standing that "sections 631 and 632.7 do

13
not impose any confidentiality requirement." (Doc. 33 at 2:5-8 in No. 5:22-cv-01456-SB-SP (C.D. Cal.

14
Feb. 17, 2023)) (citing *Revitch*, 2019 WL 5485330, at *3 n.3 (citing *Guzman*, 11 Cal. App. 5th at 192

15
n.7); *Flanagan v. Flanagan*, 27 Cal.4th 766, 771 n.2 (2002)).

16
The plaintiff in *Sterling Jewelers I* subsequently moved for reconsideration of such order, and

17
pointed out that the plaintiff had previously argued that sections 631 and 632.7 do not impose any

18
confidentiality requirement, and once again cited *Revitch*, *Guzman*, and *Flanagan* in support.  (Doc. 46

19
at 8:13-18 in No. 5:22-cv-01456-SB-SP (C.D. Cal. Apr. 20, 2023).)   In addition, the plaintiff cited

20
*Campbell*, 951 F.3d at 1118-19, which held that a statutory violation of CIPA would satisfy the concrete

21
injury requirement for Article III standing.  (Doc. 46 at 9:1-3 in No. 5:22-cv-01456-SB-SP (C.D. Cal.

22
Apr. 20, 2023).)

23
Upon review of such motion for reconsideration, the court effectively abandoned its reliance

24
upon the defendant's facial challenge and instead relied solely upon the defendant's factual challenge in

25
a subsequent order that was limited to its unique facts.[1]  *Byars v. Sterling Jewelers, Inc.*, 2023 WL

26
---

[1] The plaintiff therein had failed to timely file a declaration averring that she visited the defendant's chat
27
feature as alleged in the operative pleading due to the plaintiff's confusion about whether the Court
allowed such filing to occur based on the Court's remarks about the exchange of the respective parties'
28
declarations during a prior hearing. (Doc. 44 at 14:1-5; Doc. 46 at 1:19-2:5; 2 n.1 in No. 5:22-cv-01456-
Continued on the next page

MEM ISO RESPONSE TO OSC RE: STANDING                                              No. 3:22-cv-09042-JSC

4195768, at *4 (C.D. Cal. May 18, 2023) (Blumenfeld, J.) ("*Sterling Jewelers II*") ("the Court need not decide whether *Campbell* states the absolute rule advanced by Plaintiff or whether such a rule survives *TransUnion*") ("Because Plaintiff has not shown that dismissal based on Zale's factual challenge constituted manifest error of law or fact, it is immaterial whether Zale's facial challenge presented an independent basis for dismissal."). Thus, the court that decided *Sterling Jewelers I* was unwilling to stand by the portion of such decision regarding the facial challenge in *Sterling Jewelers II*.

### d.       *Lightoller v. Jetblue Airways Corp.* Is Persuasive.

Although the Court's OSC does not expressly mention *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023) (Huff, J.), the Court's reliance is implicit.

Although *Lightoller* cited *TransUnion* in support, *id.* at *3, as mentioned above, a district court in the Southern District of California recently held that "*TransUnion* does not undermine the reasoning in [prior cases finding standing in CIPA cases]." *Build.com*, 2023 WL 4535531, at *3.

Second, *Lightoller* seems to imply that CIPA claims must implicate the plaintiff's "personal information" in order to be actionable, but this is wrong as a matter of law. As mentioned above, section 631 does not impose any confidentiality requirement. *Revitch*, 2019 WL 5485330, at *3 n.3 (citing *Guzman*, 11 Cal. App. 5th at 192 n.7). Under *Lightoller*'s extremely narrow view of a concrete injury, a plaintiff suing under CIPA would have to allege the interception of "personal information" or confidential information even though the CIPA statutes, themselves, impose no such requirement. Thus, *Lightoller* has taken an anomalous position that threatens to make CIPA claims not available to be litigated in federal court for a large swath of cases.

Third, although *Lightoller* cited *Sterling Jewelers I*, *Lightoller* did not cite to *Sterling Jewelers II*, the latter of which, as mentioned above, effectively disavowed relying upon its prior facial standing analysis because the plaintiff therein pointed out that the CIPA claims at issue were based on non-confidential information, and instead relied solely on the factual standing analysis, *i.e.*, the plaintiff's

SB-SP (C.D. Cal. Apr. 20, 2023).) The plaintiff's declaration existed even before the defendant moved to dismiss, and was served on the defendant's counsel before such motion was even filed, but such declaration was not timely filed as a result of the confusion. (Doc. 46-1 ¶ 2 & Ex. A in No. 5:22-cv-01456-SB-SP (C.D. Cal. Apr. 20, 2023).) Thus, the filing error in *Sterling Jewelers* is unlikely to be repeated in other cases.

Notably, unlike the circumstances at issue in *Sterling Jewelers I*, to date, Defendant has not made a factual challenge to whether Plaintiff visited and used Defendant's chat feature.

MEM ISO RESPONSE TO OSC RE: STANDING                                    No. 3:22-cv-09042-JSC

1    failure to file a declaration averring that she visited the defendant's website at issue. *Sterling Jewelers*

2    *II*, 2023 WL 4195768, at \*4.

3         Finally, although *Lightoller*'s analysis briefly mentions "intrusion upon seclusion" as a harm

4    traditionally recognized as providing a basis for lawsuits in American courts, *Lightoller*, 2023 WL

5    3963823, at \*4 (citing *TransUnion*), it avoids ***any*** analysis of whether "intrusion upon seclusion" is

6    closely analogous, let alone, analogous at all to a CIPA claim under section 631(a). An intangible harm

7    can constitute a concrete injury if it bears "a close relationship to harms traditionally recognized as

8    providing a basis for lawsuits in American courts," like "reputational harms, disclosure of private

9    information, ***and intrusion upon seclusion***" or those "specified by the Constitution itself." *TransUnion*,

10   141 S. Ct. at 2204 (emphasis added); *see also Spokeo*, 578 U.S. at 340–41. As mentioned above, the

11   fundamental harm that Plaintiff and all other similarly situated individuals experienced is having an

12   "unannounced second auditor" intercept her chat communication. *Ribas*, 38 Cal.3d at 360-61. How is

13   that not closely analogous to an "intrusion upon seclusion" common law claim? Indeed, the district

14   court in *Build.com* recently held that the "privacy injury" alleged by a plaintiff suing under section

15   631(a) "is sufficiently similar to a 'historical or common-law analogue.'" *Build.com*, 2023 WL

16   4535531, at \*4 (quoting *TransUnion*). In support, the *Build.com* court cited the Ninth Circuit's decision

17   in *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022), which held that "traditional claims for

18   'invasion of privacy, ***intrusion upon seclusion***, and nuisance'" are "evidence of a common-law analog

19   to privacy violations." *Id.* at 1118 (emphasis added). By failing to address whether Plaintiff's section

20   631(a) claim is "closely analogous" to a common law intrusion upon seclusion claim, *Lightoller* is not

21   persuasive.

                    **e.     *Mikulsky v. Noom, Inc.* Is Unpersuasive.**

23        Although the Court's OSC has cited *Mikulsky v. Noom, Inc.*, - F. Supp. 3d -, 2023 WL 4567096

24   (S.D. Cal. July 17, 2023) (Huff, J.), *Mikulsky*, which was authored by the same federal district judge

25   who authored *Lightoller*, is unpersuasive for the same reasons why *Lightoller* is unpersuasive. In

26   particular, *Mikulsky* relies heavily upon *Sterling Jewelers I*, and repeats the same error committed by

27   *Lightoller* by assuming that a section 631(a) claim imposes a sensitive information or confidential

28   information requirement, which is not the case. *Revitch*, 2019 WL 5485330, at \*3 n.3 (citing *Guzman*,

1   11 Cal. App. 5th at 192 n.7).  *Mikulsky* also fails to recognize that the court therein effectively disavowed

2   relying upon the facial standing analysis as reflected in *Sterling Jewelers II*.

3                     **f.        *I.C. v. Zynga, Inc.* Is Factually Distinguishable.**

4         Although the Court's OSC has cited *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal.

5   2022), *Zynga* is both factually and legally distinguishable.  In *Zynga*, the plaintiffs filed a consolidated

6   putative class action against social gaming company Zynga Inc. in connection with a large-scale data

7   breach of players' account information.  *Id.* at 1038.  The operative pleading alleged "29 causes of action

8   under state common and statutory law."[2]  *Id.* at 1045.  The operative pleading "alleges that Zynga failed

9   to protect its customers' PII by, among other things, using outdated password encryption methods that

10  were banned for use by federal government agencies as early as 2010."  *Id.*  The defendant moved to

11  dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *Id.*  The court stated, "The critical

12  inquiry raised by Zynga is whether the injuries alleged are concrete."  *Id.* at 1046.  The court stated,

13  "Here, traceability and redressability are not at issue."  *Id.*

14        The Court began its analysis of the alleged injuries in fact by analyzing the alleged harms

15  traditionally recognized at common law.  The Court, considering both alleged harms analogous to the

16  common law private torts of disclosure of private facts and intrusion upon seclusion, found that

17  "Plaintiffs have not demonstrated that the information stolen was of a nature that disclosure or intrusion

18  thereupon would be highly offensive to the reasonable person."  *Id.* at 1049.  The Court elaborated:

19          "[T]he Court is hard pressed to conclude that basic contact information, including one's email
            address, phone number, or Facebook or Zynga username, is private information. All of this
20          information is designed to be exchanged to facilitate communication and is thus available
            through ordinary inquiry and observation."
21

22

23  [2] The claims were for:  "negligence (counts I and II); negligence per se (counts III and IV); negligent
    misrepresentation (counts V and VI); breach of contract (counts VII and counts VIII); unjust enrichment
24  (counts IX and X); breach of confidence (count XI); violation of state data breach statutes (counts XII
    and XIII); intrusion upon seclusion (counts XIV and XV); declaratory judgment (counts XVI and XVII);
25  violations of California Unfair Competition La (count XVIII), California False Advertising Law (count
    XIX), California Consumers Legal Remedies Act (count XX), Missouri Merchandising Practices Act
26  (count XXI), Wisconsin Deceptive Trade Practices Act (count XXII), Colorado Consumer Protection
    Act (count XXIII), Iowa Consumer Fraud Act (count XXIV), Indiana Deceptive Consumer Sales Act
27  (count XXV), Kansas Consumer Protection Act (count XXVI), and Michigan Consumer Protection Act
    (XXVII); and publicity given to private life (counts XXVIII and XXIX)."  *Id.* at 1045.
28        There is nothing to indicate that any of the claims were for violations of CIPA.

1    *Id.* at 1049.  The Court added, "The Court does not view the collection of email addresses, phone

2    numbers, Zynga usernames, Zynga passwords, and Facebook usernames so private that their revelation

3    would be highly offensive to a reasonable person." *Id.*  The Court explained:

> "[I]n data breach cases, courts must examine the nature of the specific information at issue to
> determine whether privacy interests were implicated at all. Otherwise, every data breach (or any
> situation in which one loses control of information) would confer standing, regardless of whether
> private information is exposed."

*Id.* at 1050.  The Court found that the alleged privacy injuries were not sufficiently concrete because of

an "insufficient fit between the loss of information alleged here and the common law privacy torts of

private disclosure of private facts and intrusion upon seclusion." *Id.*

Unlike the circumstances at issue in *Zynga*, the instant action does not allege a data breach caused

by a hacker.  In addition, the instant action alleges violation of CIPA, which were not at issue in *Zynga*

based on the description of causes of action in such decision.

Moreover, "basic contact information" that was the subject of the data breach in *Zynga* is

effectively record information for purposes of either the federal Wiretap Act or CIPA. It is well-

established that the disclosure of record information does not satisfy the "content" requirement of section

631(a).  "The Ninth Circuit has held that 'contents' means 'the intended message conveyed by the

communication' as opposed to 'record information regarding the characteristics of the message that is

generated in the course of the communication.'"  *Hammerling v. Google LLC*, 2022 WL 2812188, at

*14 (N.D. Cal. July 18, 2022) (Breyer, J.) (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th

Cir. 2014)).  "Generally, customer information such as a person's name, address, and subscriber number

or identity is **record information**, but it may be contents when it is part of the substance of the message

conveyed to the recipient." *Id.* (emphasis added).  In other words, under the second clause of section

631(a) of the Penal Code, the mere disclosure of record information does not satisfy the "content"

requirement.  *Id.* at *15 ("Because Plaintiffs fail to allege that Google intercepted "contents" of any

communication, the CIPA claim fails.").

In stark contrast, the Second Amended Complaint in the instant action alleges that Plaintiff

conducted a "brief conversation with an agent of Defendant through the Website's chat feature." (SAC

¶ 4.)  The SAC also alleges that the contents of Plaintiff's chat communication were intercepted by

1    Defendant's chat provider.  (SAC ¶¶ 11-12, 23.)  One can reasonably infer such interception of the

2    contents of such communications.  Thus, *Zynga* is factually and legally distinguishable.  What is highly

3    offensive to Plaintiff based on her CIPA rights is having an unannounced second auditor of her chat

4    communications with Defendant.  *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (holding that "a

5    substantial distinction has been recognized between the secondhand repetition of the contents of a

6    conversation and its simultaneous dissemination to ***an unannounced second auditor***, whether that

7    auditor be a person or mechanical device[.]") (emphasis added).

8           **2.      The SAC Has Sufficiently Alleged an Injury to Plaintiff's Dignity That Is "Fairly**

9                   **Traceable" to Defendant's Conduct.**

10          As the Ninth Circuit has explained, "[w]hen the injury in fact is the violation of a statutory right

11   that we inferred from the existence of a private cause of action, causation and redressability'—the two

12   other elements of standing—'will usually be satisfied.'"  *Tourgeman v. Collins Financial Servs., Inc.*,

13   755 F.3d 1109, 1116 (9th Cir. 2014) (citation omitted).  "The Ninth Circuit has instructed that the 'article

14   III causation threshold' is 'less rigorous' than proximate causation."  *Greenley*, 2023 WL 4833466, at

15   *6.

16          To the extent that the Court is concerned about the causal connection between Plaintiff's injury

17   to her dignity and Defendant's alleged wrongdoing in terms of Plaintiff suffering a self-inflicted injury,

18   a well-recognized treatise on federal practice has explained, "Self-inflicted injury may seem a suspicious

19   basis for standing.  It is clear, however, that no rigid lines are drawn on this basis."  13A Charles A.

20   Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. Apr. 2022

21   Update) ("Wright, Miller & Cooper").  That treatise further explained, "Standing is not defeated merely

22   because the plaintiff has in some sense contributed to his own injury."  *Id.* § 3531.5 & n.70.  "A self-

23   inflicted injury defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break***

24   ***the causal chain***."  *Id.* at n.70 (emphasis added) (citation omitted); *Id.* at n.73 ("Standing is defeated

25   only if it is concluded that the injury is ***so completely due to the plaintiff's own fault as to break the***

26   ***causal chain***.") (emphasis added).

27          Notably, such treatise cited in support as illustrative the U.S. Supreme Court's landmark decision

28   in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982).  Wright, Miller & Cooper, *supra*, §

MEM ISO RESPONSE TO OSC RE: STANDING                                                    No. 3:22-cv-09042-JSC

3531.5 & n.61.  *Havens* continues to be recognized as supporting tester standing even by the U.S. Supreme Court itself.  *See Federal Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (citing *Havens*) (rejecting the recognition of an exception to traceability for injuries that a party purposely incurs).

Also, the Ninth Circuit has repeatedly cited *Havens*.  *Langer*, 57 F.4th at 1094; *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017) ("*CREEC*"); *id.* at 1096 (holding that "a plaintiff has constitutional standing" even if "her only motivation for visiting a facility is to test it for ADA compliance"); *id.* at 1102; *Tourgeman*, 755 F.3d at 1115-16.

The mere fact that *Havens*, *Langer*, and *CREEC* are all discrimination cases is a distinction without a difference because the ***dignitary*** harm in civil rights cases,[3] is the same type of intangible harm that is at issue in all CIPA cases.  *Friddle*, 16 Cal. App. 4th at 1660-61.

Here, the injury to Plaintiff's dignity was "not solely attributable to" "[P]laintiff's actions." Wright, Miller & Cooper, *supra*, at n.70 (citing *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015)).  Rather, the SAC makes it clear that Defendant's unlawful conduct combined together with the conduct of its third-party chat provider substantially contributed to causing Plaintiff's intangible injuries.

### 3.     If Any Defect Remains, Leave to Amend Should Be Granted.

If the Court finds that the SAC fails to sufficiently plead standing to sue, Plaintiff will cure it. As such, if the Court is inclined to determine that the SAC fails to adequately plead Article III standing to sue based on a pleading deficiency, the Court should grant Plaintiff leave to amend to file a Third Amended Complaint.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); Fed. R. Civ. P. Rule 15(a)(2).

Dated:  September 14, 2023                    PACIFIC TRIAL ATTORNEYS, P.C.

                                                              By: */s/ Scott J. Ferrell*

                                                              Scott. J. Ferrell
                                                              Attorneys for Plaintiff

---

[3] *See Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 874 (9th Cir. 2017).

MEM ISO RESPONSE TO OSC RE: STANDING                                    No. 3:22-cv-09042-JSC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2023, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE TO PLAINTIFF RE: STANDING** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.


Dated:  September 14, 2023


                                       */s/ Scott J. Ferrell*
                                           Scott J. Ferrell

CERTIFICATE OF SERVICE